FILED
2022 May-02  PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

EXHIBIT 1

ELECTRONICALLY FILED
4/1/2022 3:53 PM
01-CV-2022-900975.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93    Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Ca<br>01<br><br>Date of Filing:<br>04/01/2022 | Judge Code: |

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### RONNIE HILL JR. v. CHRISTOPHER PATTERSON ET AL

**First Plaintiff:** ☐ Business  ☑ Individual  ☐ Government  ☐ Other    **First Defendant:** ☐ Business  ☑ Individual  ☐ Government  ☐ Other

---

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☑ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ QTLB - Quiet Title Land Bank
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

---

**ORIGIN:**    F ☑ INITIAL FILING        A ☐ APPEAL FROM DISTRICT COURT        O ☐ OTHER

R ☐ REMANDED        T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

---

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO    **Note:** Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

---

**RELIEF REQUESTED:**    ☑ MONETARY AWARD REQUESTED  ☐ NO MONETARY AWARD REQUESTED

---

**ATTORNEY CODE:**

MID007          4/1/2022 3:53:40 PM          /s/ DAVIS LAWSON MIDDLEMAS
_____    Date          Signature of Attorney/Party filing this form

---

**MEDIATION REQUESTED:**    ☐ YES ☐ NO ☑ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:**    ☐ YES ☑ NO

ELECTRONICALLY FILED
4/1/2022 3:53 PM
01-CV-2022-900975.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**
**BIRMINGHAM DIVISION**

| | |
|---|---|
| **RONNIE HILL, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.:** |
| | ) |
| **CHRISTOPHER PATTERSON;** | ) |
| **USA TRUCK, LLC;** | ) |
| **AND THOSE OTHER PERSONS,** | ) |
| **CORPORATIONS, AND/OR OTHER LEGAL** | ) |
| **ENTITIES DESIGNATED HEREIN AS** | ) |
| **FICTITIOUS PARTIES,** | ) |
| | ) |

**Fictitious Defendants A-C, whether singular or plural, those person(s), corporation(s), or other legal entity(s), other than those described above whose negligence, wantonness, or other wrongful conduct, individually or combined with the conduct of the Defendants named herein, caused or contributed to the injuries sustained by Plaintiff made the basis of this lawsuit;**

**Fictitious Defendants D-F, whether singular or plural, those person(s), corporation(s), or other legal entity(s), other than those described above who or which issued any policy of insurance which would provide coverage for Plaintiff's injuries on the occasion made the basis of this action;**

**Plaintiff avers that the identities of the fictitious party defendants described herein are otherwise unknown to Plaintiff at this time or, if their names are known to Plaintiff, their identities as proper party defendants are not known to Plaintiff at this time, and their true names will be substituted by amendment when ascertained,**

| | |
|---|---|
| | ) |
| **Defendants.** | ) |

## **COMPLAINT**

COME NOW, Plaintiff Ronnie Hill, Jr., by and through undersigned counsel, and files this

Complaint against Defendants Christopher Patterson (hereinafter "Defendant Patterson"), USA

Truck, LLC (hereinafter "Defendant USA Truck") and Fictitious Defendants A-F, and shows this

Honorable Court the following:

**PARTIES**

1.      Plaintiff Ronnie Hill, Jr. is over the age of nineteen (19) years and a resident of Birmingham, Alabama.

2.      Defendant Christopher Patterson is, upon information and belief, over the age of nineteen (19) years and a resident of Carrollton, Georgia.

3.      Defendant USA Truck, LLC is a foreign interstate freight shipping and trucking company which, upon information and belief, does business throughout the United States including, the state of Alabama.

4.      Defendants A, B, and C, whether singular or plural, are those person(s), corporation(s), or other legal entity(s), other than those described above whose negligence, wantonness, or other wrongful conduct, individually or combined with the conduct of the Defendants named herein, caused or contributed to the injuries sustained by Plaintiff made the basis of this lawsuit.

5.      Defendants D, E and F, whether singular or plural, are those person(s), corporation(s), or other legal entity(s), other than those described above who or which issued any policy of insurance which would provide coverage for Plaintiff's injuries on the occasion made the basis of this.

## FACTS

6.      On or about July 17, 2020, at approximately 3:49 am, Plaintiff was operating a 2001 GMC Yukon travelling North on Interstate 59 in the city of Birmingham, Jefferson County, Alabama.

7.      At that same time, Defendant Patterson was operating a 2017 Kenworth tractor-trailer and was travelling alongside Plaintiff on Interstate 59 in the City of Birmingham, Jefferson County, Alabama.

8.      Defendant Patterson failed to maintain his lane of travel, failed to keep a proper lookout, failed to maintain proper attention while driving, failed to maintain awareness of surrounding traffic circumstances while changing lanes and drove/allowed his tractor-trailer to enter Plaintiff's lane of travel on Interstate 59 and violently crashed into Plaintiff's vehicle. Defendant Patterson's actions were violative of Alabama Code Section 32-5A-88.

9.      Defendant Patterson, as the driver of a tractor-trailer vehicle, had an enhanced obligation under Alabama law and under the Federal Motor Carrier Safety Regulations to operate his dangerous vehicle safely and in a non-negligent manner.  Defendant Patterson failed to do so.

10.     Defendant Patterson, while acting within the scope of his employment with Defendant USA Truck and as agent for Defendant USA Truck, negligently and wantonly operated his tractor-trailer and such negligence and wantonness was the proximate cause of Plaintiff's injuries.

11.     The collision, caused by the actions of Defendant Patterson and/or Fictitious Defendants A-C, resulted in bodily injuries to the Plaintiff including serious injuries to the cervical and lumbar spine resulting in loss of function and radiculopathy to his upper and lower extremities. Plaintiff has suffered pain as a result of the injuries and will continue to suffer with pain in the future.   Additionally, Plaintiff has suffered great physical and mental pain and anguish and will continue to suffer in this manner for a long time into the future, if not for the balance of his natural life.

## COUNT ONE
## NEGLIGENCE AND WANTONNESS – CHRISTOPHER PATTERSON

12.     Plaintiff reaffirms, reavers, incorporates and adopts the allegations set out in paragraphs 1 through 11 above, as if set out here in full.

13.     On or about July 17, 2020, Plaintiff was caused to be injured when Defendant Patterson failed to maintain his lane of travel, failed to keep a proper lookout, failed to maintain proper attention while driving, failed to maintain awareness of surrounding traffic circumstances while changing lanes and drove/allowed his tractor-trailer to enter Plaintiff's lane of travel on Interstate 59 and violently crashed into Plaintiff's vehicle, resulting in severe bodily injuries to Plaintiff.

14.     Defendant Patterson, as the driver of a tractor-trailer vehicle, had an enhanced obligation under Alabama law and under the Federal Motor Carrier Safety Regulations to operate his dangerous vehicle safely and in a non-negligent manner.  Defendant Patterson failed to do so.

15.     Defendant Patterson, while acting within the scope of his employment with Defendant USA Truck and as agent for Defendant USA Truck negligently and wantonly operated his tractor-trailer and such negligence and wantonness was the proximate cause of Plaintiff's injuries.

16.     As a result of the aforesaid wrongful, negligent, and/or wanton conduct of Defendant Patterson and/or Fictitious Defendants A-C, the Plaintiff was caused to be injured and damaged as follows:

(a)     Plaintiff suffered permanent injuries in and about his body;

(b)     Plaintiff incurred, and may incur in the future, sums of money in the nature of doctor, hospital, drug and other expenses for treatment of his injuries;

4

(c)      Plaintiff suffered, and will suffer in the future, physical pain and mental anguish as a result of his injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Patterson and/or Fictitious Defendants A-C for an amount of compensatory and/or punitive damages as a jury may determine to be appropriate and necessary, together with interest from the date of injury and the costs of this proceeding.

<u>**COUNT TWO**</u>
<u>**VIOLATION OF ALABAMA CODE SECTION 32-5A-88 –**</u>
<u>**CHRISTOPHER PATTERSON**</u>

17.      Plaintiff reaffirms, reavers, incorporates and adopts the allegations set out in paragraphs 1 through 16 above, as if set out here in full.

18.      On or about July 17, 2020, Plaintiff was caused to be injured when Defendant Patterson failed to maintain his lane of travel, failed to keep a proper lookout, failed to maintain proper attention while driving, failed to maintain awareness of surrounding traffic circumstances while changing lanes and drove/allowed his tractor-trailer to enter Plaintiff's lane of travel on Interstate 59 and violently crashed into Plaintiff's vehicle, and resulting in severe bodily injuries to Plaintiff.

19.      Defendant Patterson negligently and/or wantonly operated his motor vehicle; specifically, his actions were in violation of Alabama Code Sections 32-5A-88 in that his vehicle was to be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

20.      As a result of the aforesaid wrongful, negligent, and/or wanton conduct of Defendant Patterson and/or Fictitious Defendants A-C, the Plaintiff was caused to be injured and damaged as follows:

5

(a)     Plaintiff suffered permanent injuries in and about his body;

(b)     Plaintiff incurred, and may incur in the future, sums of money in the nature of doctor, hospital, drug and other expenses for treatment of his injuries;

(c)     Plaintiff suffered, and will suffer in the future, physical pain and mental anguish as a result of his injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Patterson and/or Fictitious Defendants A-C for an amount of compensatory and/or punitive damages as a jury may determine to be appropriate and necessary, together with interest from the date of injury and the costs of this proceeding.

## COUNT THREE
## RESPONDEAT SUPERIOR – USA TRUCK

21.     Plaintiff reaffirms, reavers, incorporates and adopts the allegations set out in paragraphs 1 through 20 above, as if set out here in full.

22.     This Count is based on Respondeat Superior in that at all times material hereto, Defendant Patterson was acting as an agent, employee, and/or servant of Defendant USA Truck and was acting within the line and scope of his employment with USA Truck.

23.     Defendant Patterson was acting within the line and scope of his employment with Defendant USA Truck, and as a proximate cause of the negligent and wanton conduct of Defendant Patterson the corporate Defendant is liable for his actions.

WHEREFORE, Plaintiff demands judgment against the Defendant USA Truck and/or fictitious defendants for an amount of compensatory and/or punitive damages as a jury may determine to be appropriate and necessary, together with interest from the date of injury and the costs of this proceeding.

**COUNT FOUR**
**NEGLIGENT AND WANTON HIRING, RETENTION,**
**TRAINING AND SUPERVISION, AND FAILURE TO IMPLEMENT/ENFORCE**
**NECESSARY SAFETY POLICIES AND PROCEDURES -**
**USA TRUCK**

24.     Plaintiff reaffirms, reavers, incorporates and adopts the allegations set out in paragraphs 1 through 23 above, as if set out here in full.

25.     Defendant USA Truck negligently and wantonly hired, retained, trained, and supervised its employees and/or agents, and failed to enforce, monitor, and implement certain policies and procedures, and such acts allowed its employee and/or agent, Defendant Patterson, to dangerously operate its 2017 Kenworth tractor-trailer when he changed lanes and entered into Plaintiff's lane of travel on Interstate 59 and violently crashed into Plaintiff's vehicle, resulting in severe bodily injuries to Plaintiff. Defendant USA Truck is in a business which requires traveling by vehicles on federal, state, and county roads/highways. Defendant USA Truck had a duty to ensure the competency of its driver by properly training and supervising all drivers operating vehicles within the line and scope of employment with Defendant USA Truck. The acts and/or omissions of Defendant USA Truck constitute negligent and wanton hiring, retention, training, monitoring, and supervision.

26.     As a result of Defendant USA Truck's negligent and wanton failure to ensure the competency of its drivers, enforce or implement reasonable safety policies and procedures, hire and retain qualified drivers and to train its drivers regarding policies and procedures, Plaintiff was seriously injured.

WHEREFORE, Plaintiff demands judgment against the Defendant USA Truck and/or fictitious defendants for an amount of compensatory and/or punitive damages as a jury may

determine to be appropriate and necessary, together with interest from the date of injury and the costs of this proceeding.

## <u>COUNT FIVE</u>
## <u>NEGLIGENT/WANTON ENTRUSTMENT – USA TRUCK</u>

27.    Plaintiff reaffirms, reavers, incorporates and adopts the allegations set out in paragraphs 1 through 26 above, as if set out here in full.

28.    On or about July 17, 2020, Defendant USA Truck was the owner of and had the right of control over the use of the motor vehicle driven by Defendant Patterson.  Defendant USA Truck negligently and/or wantonly entrusted said vehicle to Defendant Patterson, who negligently and/or wantonly operated said vehicle causing serious injuries to Plaintiff.  Defendant USA Truck entrusted said vehicle to Defendant Patterson and is therefore liable to the Plaintiff.  Said negligent and/or wanton conduct was a proximate cause of the Plaintiff's injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the Defendant USA Truck and/or fictitious defendants for an amount of compensatory and/or punitive damages as a jury may determine to be appropriate and necessary, together with interest from the date of injury and the costs of this proceeding.

Respectfully Submitted,

s/ *Davis L. Middlemas*
Attorney for Plaintiff

Morris Bart & Associates, LLC
Shipt Tower
420 North 20th Street
Suite 2750
Birmingham, Alabama 35203
(205) 484-0900
dmiddlemas@morrisbart.com

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES.**

*s/ Davis L. Middlemas* _____

**PLAINTIFF'S  ADDRESS:**
Christopher Patterson
c/o Davis L. Middlemas
Morris Bart & Associates, LLC
Shipt Tower
420 North 20th Street
Birmingham, Alabama 35203

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL:**

Christopher Patterson
45 Shadow Lane
Carrollton, GA 30117

USA Truck, LLC
CT Corporation System
124 West Capitol Avenue, Suite 1900
Little Rock, AR 72201

ELECTRONICALLY FILED
4/1/2022 3:53 PM
01-CV-2022-900975.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**
**BIRMINGHAM DIVISION**

| | |
|---|---|
| **RONNIE HILL, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.:** |
| | ) |
| **CHRISTOPHER PATTERSON;** | ) |
| **USA TRUCK, LLC;** | ) |
| **AND THOSE OTHER PERSONS,** | ) |
| **CORPORATIONS, AND/OR OTHER LEGAL** | ) |
| **ENTITIES DESIGNATED HEREIN AS** | ) |
| **FICTITIOUS PARTIES,** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF'S INTERROGATORIES
## TO DEFENDANT USA TRUCK, LLC

COMES NOW the Plaintiff pursuant to Alabama Rule of Civil Procedure 33 and hereby propounds to the Defendant USA Truck, LLC, the following Interrogatories to be answered within the time allowed by ARCP 33(a).

A. These discovery requests are continuing in character so as to require you to file supplementary answers if you obtain additional or different information before trial.

B. If after conducting a reasonable investigation you cannot answer an Interrogatory, you should so state and answer to the extent that you can, stating what information you do have, what information you cannot provide and stating the efforts to locate and obtain the unknown information.

## DEFINITIONS

For the purposes of these Interrogatories and as used herein, unless otherwise specified, the following words shall have, and be construed with reference to, the following meanings and definitions:

1) "Identify" when used in reference to a natural person shall mean to state his or her full name and current or last known residence address, current employer, and current business address; when used with respect to a document (as hereinafter defined) "identify" means to state the date, subject or substance, author, all recipients, type of documents (e.g., as defined below), its present location, and the identity of each of its current custodians, and shall include documents (a) with respect to which a privilege is, or may be, claimed and (b) documents

1

which have been destroyed, lost, misplaced or damaged; when used in reference to an occurrence shall mean to state facts, dates, documents, people, and places that are needed to fully explain the occurrence.

2) "Document" and "documents" shall include, without limitation, every written, printed or digital version of: any paper, letter, text, form, pamphlet, brochure, email, fax, facsimile transmission, drawing, picture, photograph, negative, slide, movie, film, video, audio transcription or record, memorandum, manuals, test, testing results, chart, report, statement, article, note, receipt, contract, agreement, form, work sheet, journal, ledger, file, book, microfilm, audio recording, video recording; driver's daily log book(s); Motor Carrier Time records; travel records, documents and reports, including driver's trip envelopes and/or trip reports, daily loads or work reports, fuel purchase reports, border crossing reports, customs declarations, driver reports, vehicle inspection reports, gate receipts, International Registration Program documents, International Fuel Tax Agreement documents, over/short & damage reports, overweight/oversize reports and citations, out-of-service reports and orders, state entry and departure records, ports of entry receipts,  weight/scale reports, or any other reports made by the driver; trip expense documents, records, reports and receipts for expenses, regardless of type, including cash advance receipts, fuel, credit card and debit card receipts and statements, expense vouchers, fuel billing statements, fuel receipts, equipment purchase receipts, lodging receipts, expense sheets, toll receipts, weight/scale receipt,  food purchase receipts, all expense sheets and any other trip expense receipts; all pick-up and delivery records used to request the transport of commerce whether prepared by a defendant, broker,  shipper or receiver, motor carrier, driver, or other person or organization; all bills of lading and delivery manifests prepared or issued by any shipper, broker, transporting motor carrier, receiver of cargo, or defendant.   This also includes copies of bills of lading and manifests that show signed receipts for cargo along with dates and times of cargo pickup and delivery; all equipment or cargo loading, unloading or detention records, along with any other document showing pickup and delivery date and time, or detention of equipment or cargo; all written or electronic instructions communicated to the driver in reference to cargo transported, route to travel and pickup or delivery time, whether by any defendant, broker, shipper or receiver, or other person or organization; all written or electronic dispatch records indicating assignments of commercial motor vehicles equipment and drivers for cargo pickup and delivery, including the location of pick-up and delivery, and the date and time of pickup and delivery of pickup; any driver's call in records or other written or electronic records indicating communications between company and driver in reference to the movement of cargo, or the day-to-day operation of the equipment and/or driver; all accounting records, cargo transportation bills, and subsequent payment or other records indicating billing for transportation of cargo and subsequent payment for the transportation of cargo; all initial or rough driver's trip check settlement sheets along with all documents, reports or summaries showing payment to the driver; any and all motor carrier or driver created fuel, mileage, and purchase reports or records; copies of the original Com check, cash control, or similar service records and copies of front and back of all checks received or disbursed in reference to the transportation performed regardless of disbursement reason, inclusive of all checks to drivers; any and all documents, records or reports showing the location and time of fuel purchases and mileage for the date indicated, whether listed by driver name or number or "Commercial Motor Vehicle" number; any and all documents pertaining to rental or lease agreements for the commercial motor vehicle or any equipment use on the commercial motor

vehicle; any and all special or oversized permits and related documents/requests issued to, or by, any state agency to transport cargo over their territory regardless of the form of the cargo; accident packages, pictures, witness statement forms, driver statement forms, waiver of liability forms, accident and incident forms; and any and all driver's vehicle inspection reports required by Federal Motor Carrier Safety Regulation § 396.11.

3) "Correspondence" shall mean any written, printed or digital communication, transmission, letter, email, fax, facsimile, text, message, voicemail, memorandum, or note.

4) "You" or "your" shall mean any named Defendant, any fictitious Defendant and/or its affiliates, subsidiaries, its present or future officers, directors, agents, employees, and any other persons acting or purporting to act for or on its or its parents', affiliates' or subsidiaries behalf.

5) Person" or "individual" includes individuals, corporations, firms, sole proprietorships, partnerships, associations, trusts and governmental agencies, bodies and officials.

6) "Facts" include, but are not limited to, events, transactions, and occurrences, the locations of such events, transactions, or occurrences, all of which concern (as hereinabove defined), or are concerned with, in any way whatsoever, directly or indirectly, the interrogatory subject.

7) "Incident" shall mean the facts and circumstances giving rise to the allegations made the basis of this lawsuit.

8) "Plaintiff" shall mean any named Plaintiffs.

9) "FMCSA" shall mean the Federal Motor Carrier Safety Administration.

10) "FMCSR" shall mean the Federal Motor Carrier Safety Regulations applicable to interstate operations of commercial motor vehicles in the United States and shall include the State of Alabama's adoption of the Federal Motor Carrier Safety Regulations for the intrastate operation of commercial motor vehicles pursuant to *Ala. Code* § 32-9A-2 (1975).

11) "Driver File" shall mean a "Driver Qualification File" and a "Driver Personnel File" and shall include, without limitation, every written, printed or digital version of the following: Application for employment; All medical examinations and certification of medical examination cards; Driver's violations statements for each twelve month period of employment; Driver's road test; Driver's written test; Road and written test certifications issued by any Defendant or other organization; All past employment inquiries sent to former employers and their responses; Inquiries and answers on driver's license records of violations and accidents; directed to and received from any state agencies; Copies of all commercial driver's licenses that the driver possessed when applying with and working for any Defendant; Copies of all road or written test cards, medical cards, motor carrier certification of driver qualifications, and any other cards given to driver by defendant or any other motor carrier; Any hiring, retention, admonishment, termination, or warning notices and other disciplinary type documents; Any prior industrial, vehicular, cargo, or other types of accidents or losses, including any reports of cargo, loss of shortage of work, and related documents to each incident; Any customer, employee or any other individual complaints regarding the driver; Any documents of a legal nature, exclusive of driving citations, such as court notices, garnishments, arrest records, probation records, bankruptcy records or any other legal document; and All other documents, regardless of origin or subject, maintained by the defendant in reference to the driver.

12) "Duty Status Records" means a Driver's Daily Log as required by FMCSR § 395.8 or Motor Carrier Time records required by FMCSR § 395.1(e)(1)(v) or Motor Carrier Time records required by FMCSR § 395.1(e)(2)(ix).

13) "Supporting Documents" would be any documents that could be used by the motor carrier to verify the information on the driver's duty status records. These would include the documents listed by the FMCSA in their *Policy on the Retention of Supporting Documents*: "bills of lading, carrier pros, freight bills, dispatch records, electronic mobile communication/tracking records, gate record receipts, weigh/scale tickets, fuel receipts, fuel billing statements, toll receipts, toll billing statements, port of entry receipts, delivery receipts, lumper receipts, interchange and inspection reports, lessor settlement sheets, over/short and damage reports, agricultural inspection reports, driver and vehicle examination reports, crash reports, telephone billing statements, credit card receipts, border crossing reports, customs declarations, traffic citations and overweight/oversize permits and traffic citations." *Federal Register*: Volume 75, Number 111, Page 32984-32987 (June 10, 2010).

14) "Hours of Service" shall mean the limitations on the time that a driver can be in the service of a "Motor Carrier", as set forth in FMCSR 395, et seq. and as adopted by *Ala. Code* § 32-9A-2 (1975).

15) "Commercial Motor Vehicle" means any self-propelled or towed motor vehicle used on the roadway transport passengers or property when the vehicle: has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater; or is designed or used to transport more than 8 passengers (including the driver) for compensation; or is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or is used in transporting material found to be hazardous under 49 U.S.C. 5103 and transported in a quantity requiring placarding under regulations prescribed 49 CFR, subtitle B, chapter I, subchapter C. "Commercial motor vehicle" shall include any of the following: "Truck Tractor" or ("Tractor") is used to pull one or more trailer(s); Trailer is a vehicle built for hauling cargo, such as a pole trailer, a tanker, a lowboy, a flatbed, a box trailer, a car hauler, etc.; Straight Truck is a single-unit vehicle with the engine, cab and cargo compartments all on the same frame; "Passenger Vehicle" is any motor vehicle designed, constructed and used for the transportation of people; and "Placarded Vehicle" means any type vehicle transporting hazardous materials requiring the vehicle to display warning placards.

16) "Motor Carrier" shall include a "For-hire Motor Carrier", a "Common Motor Carrier", a "Contract Motor Carrier", an "Exempt Motor Carrier" or a "Private Motor Carrier". The term includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of "Commercial Motor Vehicles" and its equipment and/or accessories. A "For-hire Motor Carrier" is one who provides transportation of property or passengers to individuals and businesses. A "Common Motor Carrier" is one who provides transportation of property or passengers to any and all individuals and businesses. A "Contract Motor Carrier" is one who, under a contract, provides transportation of property or passengers only to specific individuals and businesses. A "Private Motor Carrier" is one who provides transportation of their own property or their own passengers with their own "Commercial Motor Vehicles." An "Exempt Motor Carrier" is one provides transportation of a exempt commodity and is, thereby, exempt from economic regulation by FMCSA but is still subject to the safety regulations set forth in the FMCSR.

17) A "Broker", "Freight Forwarder", "Transportation Logistics Company", or "Transportation

Intermediary" shall mean a person or company that organizes transportation of cargo, goods or freight by "Commercial Motor Vehicle" for individuals or corporations.  A "Broker", "Freight Forwarder", "Transportation Logistics Company", or "Transportation Intermediary" contracts with "Motor Carriers" move the cargo, goods or freight.

18) A "Shipper" shall mean a person or company that for whom the cargo, goods or freight are being transported by a "Motor Carrier."

19) "Out-of-Service" shall mean a declaration by an authorized enforcement officer of a Federal, State, Canadian, Mexican, or local jurisdiction that a driver, a commercial motor vehicle, or a motor carrier operation, is out-of-service pursuant to FMCSR §§386.72, 392.5, 395.13, 396.9, or compatible laws, or the North American Uniform Out-of-Service Criteria.

20) "Accident Register" shall mean record containing a list of all wrecks involving "Motor Carrier" drivers and/or "Commercial Motor Vehicles" that contains the following information and documents, as required by FMCSR § 390.15 and as adopted by Ala. Code § 32-9A-2 (1975): Date of the accident; City or town, or most near, where the accident occurred and the State where the accident occurred; Driver Name; Number of injuries; Number of fatalities; Whether hazardous materials, other than fuel spilled from the fuel tanks of motor vehicle involved in the accident, were released; and Copies of all accident reports.

21) "Computerized fleet management system" shall mean a satellite-based communication and positioning system, a driver performance data system, a vehicle diagnostic information system, an asset utilization system, a vehicle two-way or cab communication system, a computer log system, an in-vehicle computer system, a mobile communication system, log management system, paperless log system, a log scanner system, electronic logbook management system, data logging unit or any other similar type system used to compile data or communications of vehicles.

22) "On-board data recording device" shall mean any engine data recording device, electronic control module or unit (ECM/ECU), sensing diagnostic module or unit (SDM/SDU), traditional or computerized tachograph, radar collision warning system, transponder, log management system, paperless log system, electronic logbook management system, data logging, electronic mobile communication and tracking technology or any other similar type system used to compile data.

## **INTERROGATORIES**

1. Is your legal name fully and correctly stated in the Summons and Complaint? If not, then state the full legal and correct way that you should be designated as a party Plaintiff or a party Defendant in an action at law.

2. Is your company owned by or a subsidiary of another company?  If so, state the full name of the other company.

3. "Identify" any type of authority, license or permit that you have to engage in interstate and/or intrastate commerce.

4. Describe in detail and in chronological order your understanding of everything that happened to all vehicles involved in the incident made the basis of this lawsuit, including the vehicle occupied by Plaintiff, and the basis for your understanding.

5.  "Identify" all parties to any lease agreement pertaining to the "Truck Tractor" or "Trailer" or "Commercial Motor Vehicle" involved in the incident made the basis of the Complaint, including whether the lease was a permanent lease or a trip lease.

6.  State the name and address of each and every entity that had any interest in the title to or ownership of the "Truck Tractor" or "Trailer" or "Commercial Motor Vehicle" and describe the nature of each such entity's interest on the date of the incident made the basis of this lawsuit.

7.  "Identify" any "Shipper", "Broker", "Freight Forwarder", "Transportation Logistics Company", or "Transportation Intermediary" for the transportation of the goods, cargo or freight by the "Commercial Motor Vehicle" involved in the incident made the basis of the Complaint.

8.  "Identify" all owners of goods, cargo or freight being hauled by the "Commercial Motor Vehicle" involved in the incident made the basis of the Complaint.

9.  "Identify" and state the following regarding the driver of the "Commercial Motor Vehicle" involved in the incident made the basis of the Complaint, including:

    a.  whether the driver was your regular employee;
    b.  the date that the employment began;
    c.  the date that the employment ended;
    d.  the reason that the employment ended;
    e.  a complete description of any knowledge you have of any traffic violations committed by the driver either while in your employ or in previous employment;
    f.  a complete description of any knowledge you have of any hours of service violations committed by the driver either while in your employ or in previous employment;
    g.  a complete description of disciplinary action taken either by your company or a company union against the driver during his employment, or as a result of the incident made the basis of The Complaint.

10.  Does the "Commercial Motor Vehicle" involved in the incident made the basis of the Complaint have an on-board data recording device?  If your answer is affirmative, "Identify" such onboard data recording device, including:

    a.  an identification of all disks, computer tapes and other written materials generated by the use of the on-board computer during the trip;
    b.  an identification of the entity or person who has possession of these items.

11.  Were you aware of the driver having received conviction(s) or suspension(s) for violating a state or local law relating to motor vehicles?  If so, please provide the following for each such incident:

    a.  the name and address of the issuing state or local law enforcement agency;
    b.  the citation number;

    c.  the date of the conviction or suspension;
    d.  state the law allegedly violated;
    e.  provide a complete description of the circumstances of the alleged violation; and
    f.  the date that you were notified.

12. "Identify" whether the driver of the "Commercial Motor Vehicle" was alcohol or drug tested at any time during his employment, and as a result of the incident made the basis of the Complaint, including:

    a.  the type(s) of test(s);
    b.  the date(s) of the test(s);
    c.  the reason(s) for the test(s);
    d.  the identity of the entity or person that administered the test(s);
    e.  the identity of the custodian of the test(s); and
    f.  the result(s);

13. "Identify" whether the driver of the "Commercial Motor Vehicle" has ever been disqualified, pursuant to FMCSR § 391.15 or *Ala. Code* § 32-9A-2 (1975), from driving a "Commercial Motor Vehicle" during his employment, including a complete description of the circumstances that led to the disqualification.

14. "Identify" whether the driver of the "Commercial Motor Vehicle", the "Commercial Motor Vehicle" or the "Motor Carrier"  has ever been placed "Out-of-Service", including:

    a.  the name and address of country, federal, state or local law enforcement agency;
    b.  the out-of-service order number;
    c.  the date of the out-of-service order;
    d.  the reason for the out-of-service order; and
    e.  "Identifying" of any "Document" relating to the out-of service order.

15. "Identify" whether you have ever criticized the "Duty Status Records" of the driver involved in the incident made the basis of this lawsuit as a result of you audit of "Duty Status Records", including:

    a.  the number of such criticisms;
    b.  the date of the "Duty Status Record";
    c.  "Truck Tractor", "Trailer" or "Commercial Motor Vehicle" numbers on the "Duty Status Record";
    d.  shipping document number or name of shipper and commodity, or charter order number/schedule number;
    e.  an identification of any documents pertaining to the criticisms; and
    f.  an identification of any action taken as a result.

16. "Identify" all compliance reviews done of your company by any federal or state agency or third-party company, including whether the rating was satisfactory, conditional or unsatisfactory.

17. "Identify" each of the persons who was employed by your company or contracted to your company both at the time of the accident in question, and at the time these interrogatories are being answered that: has knowledge of your company safety policies and operations; trained and/or supervised the Defendant Driver; investigated the wreck made the basis of the Complaint; was involved in the drug and alcohol testing of the Defendant Driver after the wreck; participated in the maintenance and repairs of the "Commercial Motor Vehicle"; and maintains company records.  The answer should include, but not limited to, identifying the persons described as follows:

    a.  Safety Director;
    b.  Person(s) in charge of operational safety;
    c.  Driver Supervisor who worked with the Defendant Driver;
    d.  Dispatchers who worked with the Defendant Driver;
    e.  Mechanics who worked on the "Commercial Motor Vehicle";
    f.  Supervisors of the Mechanics;
    g.  Person(s) that hired the Defendant Driver;
    h.  Person(s) that were involved in alcohol and drug testing Defendant Driver after this wreck;
    i.  Medical Review Officer;
    j.  Supervisor of Records;
    k.  Person(s) who investigated the accident in question;
    l.  Person(s) who served on the accident review committee for the accident in question; and
    m.  Person(s) that made a preventability decision for the accident in question.

18. At the time of the occurrence of the incident made the basis of this lawsuit, were there any policies or contracts of insurance which might be legally construed as extending or providing some coverage (whether primary or secondary or excess) to this Defendant for any portion of the damages claimed?  If so, as to each such policy or contract, please state the following:

    a.  The name and address of each insurance company that wrote, issued or stands responsible for any such policy;
    b.  Each named or additional insured person or party;
    c.  The limits of liability coverage of said policy.

19. Has any insurance company refused to write you coverage, or terminated your coverage?  If so, as to each such company, please state the following:

    a.  The name and address of each insurance company;
    b.  The dates on which the refusal or termination was given; and
    c.  The reasons given for the refusal or termination.

20. On the date of the incident made the basis of this lawsuit, did you have a safety department, driver training department, and/or a vehicle maintenance department?  If your answer is in the affirmative, please state for each:

    a. The names, addresses, titles and qualifications of all individuals involved with this department; and

    b. the hierarchal structure of this department.

21. Has anyone (including any third person or you or any one acting on your behalf) taken a written or oral statement (whether signed or unsigned) from any person who may have knowledge of any discoverable matter which is or may be relevant to any claim or defense involved in the subject matter of the present action, whether on the issue of liability or damages?  If so, please state:

    a. The name, address and relationship to you of every person from whom any such statement was taken;

    b. The name and address of the person (and his or her employer) who took any such statement from any such person;

    c. The name and address of each person (and his or her employer) who presently has a copy of any such statement;

    **NOTE:**    With regard to your answer, Plaintiff is not asking that you produce documents that were prepared in anticipation of litigation or would possibly be subject to claims of work-product privilege.  Since no such documents are requested, such objections would not apply.

22. Detail each complaint and/or recommendation by any person or entity concerning defects and needed repairs and maintenance of the "Commercial Motor Vehicle" for the six (6) month period prior to the collision, together with the exact date of each complaint, recommendation or regular maintenance and the extent to which such complaints were satisfied and if not satisfied, the reason and identity of the person(s) making the decision not to repair.

23. Please state the name, address and relationship to you of any and all persons who may have knowledge of any discoverable matter which is or may be relevant to the subject matter involved in this action, whether in relation to any claim or any defense involved in this action or whether on the issue of liability or damages.

    **NOTE:**    With regard to your answer to this question, please see Rule 26(e)(1)(A).

24. If you expect to call an expert witness at trial, then as to each such expert, please state:

    a. The name and address of each such expert and the name and address of each such expert's employer;

    b. the relationship to you of each such expert;

    c. the qualifications and/or experience of each such expert with regard to the subject matter on which such expert is expected to testify;

    d. the subject matter on which each such expert is expected to testify;

    e. the substance of the facts and opinions to which each such expert is expected to testify including a summary of the grounds or basis for each opinion;

25. "Identify" the name, address and telephone number of your qualified brake inspector or other such person responsible for ensuring that inspections, maintenance, repairs, or service to the brakes meet the applicable safety standards at the time of the incident made the basis of this lawsuit.

26. Have you been informed that you were answering these Interrogatories under oath, and that your answers may be used as evidence at trial?


*/s Davis L. Middlemas*
Davis L. Middlemas (MID007)
Attorney for Plaintiff


OF COUNSEL:
Morris Bart & Associates, LLC
Shipt Tower
420 North 20th Street
Suite 2750
Birmingham, AL 35203
(205) 484-0900
dmiddlemas@morrisbart.com


**PLEASE SERVE WITH COMPLAINT**

ELECTRONICALLY FILED
4/1/2022 3:53 PM
01-CV-2022-900975.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**
**BIRMINGHAM DIVISION**

| | |
|---|---|
| RONNIE HILL, JR., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) |
| CHRISTOPHER PATTERSON; | ) |
| USA TRUCK, LLC; | ) |
| AND THOSE OTHER PERSONS, | ) |
| CORPORATIONS, AND/OR OTHER LEGAL | ) |
| ENTITIES DESIGNATED HEREIN AS | ) |
| FICTITIOUS PARTIES, | ) |
| | ) |
|     **Defendants.** | ) |

## PLAINTIFF'S INTERROGATORIES
## TO DEFENDANT CHRISTOPHER PATTERSON

COMES NOW the Plaintiff pursuant to Alabama Rule of Civil Procedure 33 and hereby

propounds to the Defendant Christopher Patterson, the following Interrogatories to be answered

within the time allowed by ARCP 33(a).

A. These discovery requests are continuing in character so as to require you to file
supplementary answers if you obtain additional or different information before trial.

B. If after conducting a reasonable investigation you cannot answer an Interrogatory, you
should so state and answer to the extent that you can, stating what information you do
have, what information you cannot provide and stating the efforts to locate and obtain the
unknown information.

### DEFINITIONS

For the purposes of these Interrogatories and as used herein, unless otherwise specified,

the following words shall have, and be construed with reference to, the following meanings and

definitions:

1) "Identify" when used in reference to a natural person shall mean to state his or her full name
and current or last known residence address, current employer, and current business address;
when used with respect to a document (as hereinafter defined) "identify" means to state the
date, subject or substance, author, all recipients, type of documents (e.g., as defined below),
its present location, and the identity of each of its current custodians, and shall include

documents (a) with respect to which a privilege is, or may be, claimed and (b) documents which have been destroyed, lost, misplaced or damaged; when used in reference to an occurrence shall mean to state facts, dates, documents, people, and places that are needed to fully explain the occurrence.

2) "Document" and "documents" shall include, without limitation, every written, printed or digital version of: any paper, letter, text, form, pamphlet, brochure, email, fax, facsimile transmission, drawing, picture, photograph, negative, slide, movie, film, video, audio transcription or record, memorandum, manuals, test, testing results, chart, report, statement, article, note, receipt, contract, agreement, form, work sheet, journal, ledger, file, book, microfilm, audio recording, video recording; driver's daily log book(s); Motor Carrier Time records; travel records, documents and reports, including driver's trip envelopes and/or trip reports, daily loads or work reports, fuel purchase reports, border crossing reports, customs declarations, driver reports, vehicle inspection reports, gate receipts, International Registration Program documents, International Fuel Tax Agreement documents, over/short & damage reports, overweight/oversize reports and citations, out-of-service reports and orders, state entry and departure records, ports of entry receipts,  weight/scale reports, or any other reports made by the driver; trip expense documents, records, reports and receipts for expenses, regardless of type, including cash advance receipts, fuel, credit card and debit card receipts and statements, expense vouchers, fuel billing statements, fuel receipts, equipment purchase receipts, lodging receipts, expense sheets, toll receipts, weight/scale receipt,  food purchase receipts, all expense sheets and any other trip expense receipts; all pick-up and delivery records used to request the transport of commerce whether prepared by a defendant, broker,  shipper or receiver, motor carrier, driver, or other person or organization; all bills of lading and delivery manifests prepared or issued by any shipper, broker, transporting motor carrier, receiver of cargo, or defendant.   This also includes copies of bills of lading and manifests that show signed receipts for cargo along with dates and times of cargo pickup and delivery; all equipment or cargo loading, unloading or detention records, along with any other document showing pickup and delivery date and time, or detention of equipment or cargo; all written or electronic instructions communicated to the driver in reference to cargo transported, route to travel and pickup or delivery time, whether by any defendant, broker, shipper or receiver, or other person or organization; all written or electronic dispatch records indicating assignments of commercial motor vehicles equipment and drivers for cargo pickup and delivery, including the location of pick-up and delivery, and the date and time of pickup and delivery of pickup; any driver's call in records or other written or electronic records indicating communications between company and driver in reference to the movement of cargo, or the day-to-day operation of the equipment and/or driver; all accounting records, cargo transportation bills, and subsequent payment or other records indicating billing for transportation of cargo and subsequent payment for the transportation of cargo; all initial or rough driver's trip check settlement sheets along with all documents, reports or summaries showing payment to the driver; any and all motor carrier or driver created fuel, mileage, and purchase reports or records; copies of the original Com check, cash control, or similar service records and copies of front and back of all checks received or disbursed in reference to the transportation performed regardless of disbursement reason, inclusive of all checks to drivers; any and all documents, records or reports showing the location and time of fuel purchases and mileage for the date indicated, whether listed by driver name or number or "Commercial Motor Vehicle" number; any and all documents pertaining to rental or lease agreements for

the commercial motor vehicle or any equipment use on the commercial motor vehicle; any and all special or oversized permits and related documents/requests issued to, or by, any state agency to transport cargo over their territory regardless of the form of the cargo; accident packages, pictures, witness statement forms, driver statement forms, waiver of liability forms, accident and incident forms; and any and all driver's vehicle inspection reports required by Federal Motor Carrier Safety Regulation § 396.11.

3)  "Correspondence" shall mean any written, printed or digital communication, transmission, letter, email, fax, facsimile, text, message, voicemail, memorandum, or note.

4)  "You" or "your" shall mean any named Defendant, any fictitious Defendant and/or its affiliates, subsidiaries, its present or future officers, directors, agents, employees, and any other persons acting or purporting to act for or on its or its parents', affiliates' or subsidiaries behalf.

5)  Person" or "individual" includes individuals, corporations, firms, sole proprietorships, partnerships, associations, trusts and governmental agencies, bodies and officials.

6)  "Facts" include, but are not limited to, events, transactions, and occurrences, the locations of such events, transactions, or occurrences, all of which concern (as hereinabove defined), or are concerned with, in any way whatsoever, directly or indirectly, the interrogatory subject.

7)  "Incident" shall mean the facts and circumstances giving rise to the allegations made the basis of this lawsuit.

8)  "Plaintiff" shall mean any named Plaintiffs.

9)  "FMCSA" shall mean the Federal Motor Carrier Safety Administration.

10) "FMCSR" shall mean the Federal Motor Carrier Safety Regulations applicable to interstate operations of commercial motor vehicles in the United States and shall include the State of Alabama's adoption of the Federal Motor Carrier Safety Regulations for the intrastate operation of commercial motor vehicles pursuant to *Ala. Code* § 32-9A-2 (1975).

11) "Driver File" shall mean a "Driver Qualification File" and a "Driver Personnel File" and shall include, without limitation, every written, printed or digital version of the following: Application for employment; All medical examinations and certification of medical examination cards; Driver's violations statements for each twelve month period of employment; Driver's road test; Driver's written test; Road and written test certifications issued by any Defendant or other organization; All past employment inquiries sent to former employers and their responses; Inquiries and answers on driver's license records of violations and accidents; directed to and received from any state agencies; Copies of all commercial driver's licenses that the driver possessed when applying with and working for any Defendant; Copies of all road or written test cards, medical cards, motor carrier certification of driver qualifications, and any other cards given to driver by defendant or any other motor carrier; Any hiring, retention, admonishment, termination, or warning notices and other disciplinary type documents; Any prior industrial, vehicular, cargo, or other types of accidents or losses, including any reports of cargo, loss of shortage of work, and related documents to each incident; Any customer, employee or any other individual complaints regarding the driver; Any documents of a legal nature, exclusive of driving citations, such as court notices, garnishments, arrest records, probation records, bankruptcy records or any other legal document; and All other documents, regardless of origin or subject, maintained by the defendant in reference to the driver.

12) "Duty Status Records" means a Driver's Daily Log as required by FMCSR § 395.8 or Motor Carrier Time records required by FMCSR § 395.1(e)(1)(v) or Motor Carrier Time records

required by FMCSR § 395.1(e)(2)(ix).

13) "Supporting Documents" would be any documents that could be used by the motor carrier to verify the information on the driver's duty status records. These would include the documents listed by the FMCSA in their *Policy on the Retention of Supporting Documents*: "bills of lading, carrier pros, freight bills, dispatch records, electronic mobile communication/tracking records, gate record receipts, weigh/scale tickets, fuel receipts, fuel billing statements, toll receipts, toll billing statements, port of entry receipts, delivery receipts, lumper receipts, interchange and inspection reports, lessor settlement sheets, over/ short and damage reports, agricultural inspection reports, driver and vehicle examination reports, crash reports, telephone billing statements, credit card receipts, border crossing reports, customs declarations, traffic citations and overweight/oversize permits and traffic citations." *Federal Register*: Volume 75, Number 111, Page 32984-32987 (June 10, 2010).

14) "Hours of Service" shall mean the limitations on the time that a driver can be in the service of a "Motor Carrier", as set forth in FMCSR 395, et seq. and as adopted by *Ala. Code* § 32-9A-2 (1975).

15) "Commercial Motor Vehicle" means any self-propelled or towed motor vehicle used on the roadway transport passengers or property when the vehicle: has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater; or is designed or used to transport more than 8 passengers (including the driver) for compensation; or is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or is used in transporting material found to be hazardous under 49 U.S.C. 5103 and transported in a quantity requiring placarding under regulations prescribed 49 CFR, subtitle B, chapter I, subchapter C. "Commercial motor vehicle" shall include any of the following: "Truck Tractor" or ("Tractor") is used to pull one or more trailer(s); Trailer is a vehicle built for hauling cargo, such as a pole trailer, a tanker, a lowboy, a flatbed, a box trailer, a car hauler, etc.; Straight Truck is a single-unit vehicle with the engine, cab and cargo compartments all on the same frame; "Passenger Vehicle" is any motor vehicle designed, constructed and used for the transportation of people; and "Placarded Vehicle" means any type vehicle transporting hazardous materials requiring the vehicle to display warning placards.

16) "Motor Carrier" shall include a "For-hire Motor Carrier", a "Common Motor Carrier", a "Contract Motor Carrier", an "Exempt Motor Carrier" or a "Private Motor Carrier". The term includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of "Commercial Motor Vehicles" and its equipment and/or accessories. A "For-hire Motor Carrier" is one who provides transportation of property or passengers to individuals and businesses. A "Common Motor Carrier" is one who provides transportation of property or passengers to any and all individuals and businesses. A "Contract Motor Carrier" is one who, under a contract, provides transportation of property or passengers only to specific individuals and businesses. A "Private Motor Carrier" is one who provides transportation of their own property or their own passengers with their own "Commercial Motor Vehicles." An "Exempt Motor Carrier" is one provides transportation of a exempt commodity and is, thereby, exempt from economic regulation by FMCSA but is still subject to the safety regulations set forth in the FMCSR.

17) A "Broker", "Freight Forwarder", "Transportation Logistics Company", or "Transportation Intermediary" shall mean a person or company that organizes transportation of cargo, goods or freight by "Commercial Motor Vehicle" for individuals or corporations.  A "Broker", "Freight Forwarder", "Transportation Logistics Company", or "Transportation Intermediary" contracts with "Motor Carriers" move the cargo, goods or freight.

18) A "Shipper" shall mean a person or company that for whom the cargo, goods or freight are being transported by a "Motor Carrier."

19) "Out-of-Service" shall mean a declaration by an authorized enforcement officer of a Federal, State, Canadian, Mexican, or local jurisdiction that a driver, a commercial motor vehicle, or a motor carrier operation, is out-of-service pursuant to FMCSR §§386.72, 392.5, 395.13, 396.9, or compatible laws, or the North American Uniform Out-of-Service Criteria.

20) "Accident Register" shall mean record containing a list of all wrecks involving "Motor Carrier" drivers and/or "Commercial Motor Vehicles" that contains the following information and documents, as required by FMCSR § 390.15 and as adopted by Ala. Code § 32-9A-2 (1975): Date of the accident; City or town, or most near, where the accident occurred and the State where the accident occurred; Driver Name; Number of injuries; Number of fatalities; Whether hazardous materials, other than fuel spilled from the fuel tanks of motor vehicle involved in the accident, were released; and Copies of all accident reports.

21) "Computerized fleet management system" shall mean a satellite-based communication and positioning system, a driver performance data system, a vehicle diagnostic information system, an asset utilization system, a vehicle two-way or cab communication system, a computer log system, an in-vehicle computer system, a mobile communication system, log management system, paperless log system, a log scanner system, electronic logbook management system, data logging unit or any other similar type system used to compile data or communications of vehicles.

22) "On-board data recording device" shall mean any engine data recording device, electronic control module or unit (ECM/ECU), sensing diagnostic module or unit (SDM/SDU), traditional or computerized tachograph, radar collision warning system, transponder, log management system, paperless log system, electronic logbook management system, data logging, electronic mobile communication and tracking technology or any other similar type system used to compile data.

## **INTERROGATORIES**

1. Is your legal name fully and correctly stated in the Summons and Complaint? If not, then state the full legal and correct way that you should be designated as a party Plaintiff or a party Defendant in an action at law.

2. Describe in detail and in chronological order your understanding of how this incident occurred, giving all events in detail in the order in which they occurred, before, during and after the incident, which had any bearing on the cause and manner of the happening of the incident.

3. At the time of the incident made the basis of this lawsuit, did you have a commercial driver's license?  If so, please provide the following for each such license:

      a. the state;
      b. the license number; and
      c. the date that the license was obtained.

4. "Identify" all states in which you have been issued a commercial driver's license or chauffeur's license.  Please provide the following for each such license:

      a. the state;
      b. the license number;
      c. the date that the license was obtained;
      d. the date that the license became invalid; and
      e. the reason that the license became invalid.

5. State the name, address and telephone number of all of your employer(s) on the date of the incident made the basis of the Complaint, including:

      a. whether you were a regular employee;
      b. the date that the employment began;
      c. the date that the employment ended;
      d. the reason that the employment ended;
      e. a complete description of any traffic violations committed by you while employed;
      f. a complete description of any hours of service violations committed by you while employed;
      g. a complete description of disciplinary action taken against you during your employment.

6. "Identify" all parties to any lease agreement pertaining to the "Truck Tractor" or "Trailer" or "Commercial Motor Vehicle" involved in the incident made the basis of the Complaint, including whether the lease was a permanent lease or a trip lease.

7. State the name and address of each and every entity that had any interest in the title to or ownership of the "Truck Tractor" or "Trailer" or "Commercial Motor Vehicle" and describe the nature of each such entity's interest on the date of the incident made the basis of this lawsuit.

8. "Identify" any "Shipper", "Broker", "Freight Forwarder", "Transportation Logistics Company", or "Transportation Intermediary" for the transportation of the goods, cargo or freight by the "Commercial Motor Vehicle" involved in the incident made the basis of the Complaint.

9. "Identify" all owners of goods, cargo or freight being hauled by the "Commercial Motor Vehicle" involved in the incident made the basis of the Complaint.

10. Have you ever been convicted of violating a state or local law relating to motor vehicles during your employment with, and three years prior to your employment with any Defendant?  If so, please provide the following for each such incident:

6

a.  the name and address of the issuing federal, state or local law enforcement
b.  agency;
c.  the citation number;
d.  the date of the conviction;
e.  identify the law allegedly violated;
f.  provide a complete description of the circumstances of the alleged violation; and
g.  whether any Defendant was notified.

11. "Identify" whether you were alcohol or drug tested at any time during your employment with any Defendant, and whether you were tested as a result of the incident made the basis of the Complaint, including:

a.  the type(s) of test(s);
b.  the date(s) of such test(s);
c.  the reason(s) for such test(s);
d.  the identity of the entity or person that administered the test(s);
e.  the identity of the custodian of the test(s); and
f.  the result(s).

12. "Identify" whether you have ever been disqualified, pursuant to FMCSR § 391.15 or *Ala. Code* § 32-9A-2 (1975), from driving a "Commercial Motor Vehicle" either since you have been driving or during your employment with any Defendant, including a complete description of the circumstances that led to the disqualification.

13. "Identify" whether you or your "Commercial Motor Vehicle" have ever been placed "Out-of-Service", including:

a.  the name and address of country, federal, state or local law enforcement agency;
b.  the out-of-service order number;
c.  the date of the out-of-service order;
d.  the reason for the out-of-service order; and
e.  the identity of any Defendant that was notified of the out-of service order.

14. "Identify" whether your "Duty Status Records" were ever criticized by any Defendant as a result of their audit of your "Duty Status Records", including:

a.  the number of such criticisms;
b.  the date of the "Duty Status Record";
c.  "Truck Tractor", "Trailer" or "Commercial Motor Vehicle" numbers on the "Duty Status Record";
d.  shipping document number or name of shipper and commodity, or charter order number/schedule number;
e.  an identification of any documents pertaining to the criticisms; and
f.  an identification of any action taken as a result.

15. "Identify" every "Motor Carrier" that you have worked for a period of ten years prior to your employment by any Defendant.

16. "Identify" any employer that you worked for at the same time that you were employed by any Defendant.

17. "Identify" any truck driving school from which you received training.

18. At the time of the occurrence of the incident made the basis of this lawsuit, were there any policies or contracts of insurance which might be legally construed as extending or providing some coverage (whether primary or secondary or excess) to this Defendant for any portion of the damages claimed?  If so, as to each such policy or contract, please state the following:

    a. The name and address of each insurance company that wrote, issued or stands responsible for any such policy;
    b. Each named or additional insured person or party;
    c. The limits of liability coverage of said policy.

19. Has anyone (including any third person or you or anyone acting on your behalf) taken a written or oral statement (whether signed or unsigned) from any person who may have knowledge of any discoverable matter which is or may be relevant to any claim or defense involved in the subject matter of the present action, whether on the issue of liability or damages?  If so, please state:

    a. The name, address and relationship to you of every person from whom any such statement was taken;
    b. The name and address of the person (and his or her employer) who took any such statement from any such person;
    c. The name and address of each person (and his or her employer) who presently has a copy of any such statement;

    **NOTE:** With regard to your answer, Plaintiff is not asking that you produce documents that were prepared in anticipation of litigation or would possibly be subject to claims of work-product privilege.  Since no such documents are requested, such objections would not apply.

20. Detail each complaint and/or recommendation by any person or entity made about defects and needed repairs and maintenance of the truck for the six (6) month period prior to the collision.

21. Please state the name, address and relationship to you of any and all persons who may have knowledge of any discoverable matter which is or may be relevant to the subject matter involved in this action, whether in relation to any claim or any defense involved in this action or whether on the issue of liability or damages.

    **NOTE:**        With regard to your answer to this question, please see Rule

8

26(e)(1)(A).

22. If you expect to call an expert witness at trial, then as to each such expert, please state:

    a.  The name and address of each such expert and the name and address of any such expert's employer;

    b.  the qualifications and/or experience of each such expert with regard to the subject matter on which such expert is expected to testify;

    c.  the subject matter on which each such expert is expected to testify;

    d.  the substance of the facts and opinions to which each such expert is expected to testify including a summary of the grounds or basis for each opinion;

23. Have you been informed that you were answering these Interrogatories under oath, and that your answers may be used as evidence at trial?

                                              */s Davis L. Middlemas*
                                            Davis L. Middlemas (MID007)
                                            Attorney for Plaintiff

OF COUNSEL:
Morris Bart & Associates, LLC
Shipt Tower
420 North 20th Street
Suite 2750
Birmingham, AL 35203
(205) 484-0900
dmiddlemas@morrisbart.com

**PLEASE SERVE WITH COMPLAINT**

ELECTRONICALLY FILED
4/1/2022 3:53 PM
01-CV-2022-900975.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**
**BIRMINGHAM DIVISION**

| | |
|---|---|
| **RONNIE HILL, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.:** |
| | ) |
| **CHRISTOPHER PATTERSON;** | ) |
| **USA TRUCK, LLC;** | ) |
| **AND THOSE OTHER PERSONS,** | ) |
| **CORPORATIONS, AND/OR OTHER LEGAL** | ) |
| **ENTITIES DESIGNATED HEREIN AS** | ) |
| **FICTITIOUS PARTIES,** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF'S FIRST REQUEST FOR ADMISSION OF
## FACTS TO DEFENDANT USA TRUCK, LLC

COMES NOW the Plaintiff pursuant to Alabama Rule of Civil Procedure 36 and requests

the Defendant USA Truck, LLC to admit the truth of the following facts within the time allowed

by ARCP 36(a):

1. Admit or deny that on July 17, 2020, you owned a commercial vehicle identified as a
2017 Kenworth, VIN # 1XKYD49XXHJ142493.

2. Admit or deny that on July 17, 2020, Defendant Christopher Patterson was operating
the commercial vehicle identified as a 2017 Kenworth, VIN # 1XKYD49XXHJ142493.

3. Admit or deny that on July 17, 2020, a collision occurred between said commercial
vehicle driven by Defendant Christopher Patterson and a vehicle occupied by Plaintiff.

4. Admit or deny that on July 17, 2020, Defendant Christopher Patterson was employed
by Defendant USA Truck, LLC.

5. Admit or deny that at the time of the accident described in Plaintiff's Complaint,
Defendant Christopher Patterson was acting in the course of his employment with Defendant
USA Truck, LLC.

6. Admit or deny that the accident described in the Plaintiff's Complaint occurred in the
course of Defendant Christopher Patterson's employment with Defendant USA Truck, LLC.

7. Admit or deny that the accident described in the Plaintiff's Complaint arose out of
Defendant Christopher Patterson's employment with Defendant USA Truck, LLC.

1

8. Admit or deny that the Federal Motor Carrier Safety Regulations apply to the operation of Defendant USA Truck, LLC.

9. Admit or deny that the Federal Motor Carrier Safety Regulations apply to the operation of Defendant USA Truck, LLC on the date of the incident made the basis of this lawsuit.

10. Admit or deny that the Federal Motor Carrier Safety Regulations apply to the conduct of the driver of the commercial vehicle on the date of the incident made the basis of this lawsuit.

11. Admit or deny that the state in which the incident made the basis of this lawsuit occurred has adopted the Federal Motor Carrier Safety Regulations to govern the intrastate shipment of commerce.

12. Admit or deny that Federal Motor Carrier Safety Regulation 392.2 states that "every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated."

13. Admit or deny that you operate your commercial motor vehicle(s) in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated.

14. Admit or deny that the driver involved in the incident made the basis this lawsuit operated your commercial motor vehicle during employment with you in accordance with the laws, ordinances, and regulations of the jurisdiction in which it was being operated.

15. Admit or deny that Federal Motor Carrier Safety Regulation 390.3(e) states that commercial carriers and drivers are required to be knowledgeable of and comply with the Federal Motor Carrier Safety Regulations.

16. Admit or deny that Defendant USA Truck, LLC is knowledgeable of the Federal Motor Carrier Safety Regulations.

17. Admit or deny that Defendant USA Truck, LLC complies with the Federal Motor Carrier Safety Regulations in the course of its business as a commercial carrier.

18. Admit or deny that Defendant Christopher Patterson is knowledgeable of the Federal Motor Carrier Safety Regulations.

19. Admit or deny that Defendant Christopher Patterson complies with the Federal Motor Carrier Safety Regulations in the course of his/her business as a commercial vehicle driver.

20. Admit or deny that commercial carriers must instruct their drivers regarding compliance with the Federal Motor Carrier Safety Regulations.

21. Admit or deny that commercial carriers must require their drivers to comply with the Federal Motor Carrier Safety Regulations.

22. Admit or deny that you instruct your drivers regarding compliance with the Federal Motor Carrier Safety Regulations.

2

23. Admit or deny that you require your drivers to comply with the Federal Motor Carrier Safety Regulations.

24. Admit or deny that Federal Motor Carrier Safety Regulation 390.11 states that "whenever . . . a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition."

25. Admit or deny that whenever a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition.

26. Admit or deny that whenever a duty is prescribed for your driver or a prohibition is imposed upon your driver, it is your duty to require observance of such duty or prohibition.

27. Admit or deny that the Federal Motor Carrier Safety Regulations require that a motor carrier have adequate safety management controls in place.

28. Admit or deny that Federal Motor Carrier Safety Regulation 385.3 states that "safety management controls means the systems, policies programs, practices, and procedures used by a motor carrier to ensure compliance with applicable safety and hazardous materials regulations, which ensure the safe movement of products and passengers through the transportation system, and to reduce the risk of highway accidents and hazardous materials incidents resulting in fatalities, injuries, and property damage."

29. Admit or deny that a commercial carrier must have proper safety management controls in place to ensure compliance with the applicable safety regulations in order to reduce the risk of highway accidents resulting in fatalities, injuries, and property damage.

30. Admit or deny that the Federal Motor Carrier Safety Regulations require safety management controls in place which function effectively to ensure compliance with applicable safety requirements to reduce the risk associated with:

a. Commercial driver's license standard violations (Part 383),

b. Inadequate levels of financial responsibility (Part 387),

c. The use of unqualified drivers (Part 391),

d. Improper use and driving of motor vehicles (Part 392),

e. Unsafe vehicles operating on the highways (Part 393),

f. Failure to maintain accident registers and copies of accident reports (Part 390),

g. The use of fatigued drivers (Part 395),

h. Inadequate inspection, repair, and maintenance of vehicles (Part 396),

i. Transportation of hazardous materials, driving and parking rule violations (Part 397).

j. Violation of hazardous materials regulations (Parts 170 through 177), and

k. Motor vehicle accidents and hazardous materials incidents.

31. Admit or deny that you did have adequate safety management controls in place on the date of the incident made the basis of this lawsuit.

32. Admit or deny that you did have adequate safety management controls in place at the time that the driver involved in the incident made the basis of this lawsuit was hired.

33. Admit or deny that you did have adequate safety management controls in place at all times during your employment of the driver involved in the incident made the basis of this lawsuit.

34. Admit or deny that Federal Motor Carrier Safety Regulation 391.23 requires a commercial carrier to investigate the background of all drivers applying for employment.

35. Admit or deny that Federal Motor Carrier Safety Regulation 391.23 requires the background investigation to include an inquiry into the driver's driving record during the preceding 3 years to the appropriate agency of every State in which the driver held a motor vehicle operator's license or permit during those 3 years.

36. Admit or deny that Federal Motor Carrier Safety Regulation 391.23 requires the background investigation to include an inquiry into the driver's employment record during the preceding 3 years.

37. Admit or deny that you conduct background investigations that comply with Federal Motor Carrier Safety Regulation 391.23.

38. Admit or deny that you conducted a background investigation of the driver involved in the incident made the basis of this lawsuit that complied with Federal Motor Carrier Safety Regulation 391.23.

39. Admit or deny that the purpose of the background investigation required by Federal Motor Carrier Safety Regulation 391.23 is to determine whether the driver is a safe driver.

40. Admit or deny that the purpose of the background investigation required by Federal Motor Carrier Safety Regulation 391.23 is to determine whether the driver is a qualified driver as defined by Federal Motor Carrier Safety Regulation 391.11.

41. Admit or deny that your background investigation of the driver involved in the incident made the basis of this lawsuit showed that the driver was a safe driver.

42. Admit or deny that your background investigation of the driver involved in the incident made the basis of this lawsuit showed that the driver was a qualified driver.

43. Admit or deny that Federal Motor Carrier Safety Regulation 391.11 provides that to be qualified to operate a commercial motor vehicle, the driver must meet the following 11 separate criteria:

4

a. Be at least 21 years old.

b. Be able to sufficiently read and speak the English language.

c. By reason of experience and/or training, be able to safely operate the vehicle.

d. By reason of experience and/or training, be able to determine whether the cargo has been properly loaded.

e. Be familiar with methods and procedures for securing cargo.

f. Is physically qualified to drive a commercial motor vehicle.

g. Has a currently valid commercial motor vehicle operator's license issued only by one state or jurisdiction.

h. Has prepared and furnished the motor carrier that employs him or her with the list of violations or the certificate as required by section 392.27.

i. Is not disqualified to drive a commercial motor vehicle under the rules in section 391.15.

j. Has successfully completed a driver's road test, and has been issued a certificate of driver's road test in accordance with section 391.13, or has presented an operator's license or a certificate of road test which the motor carrier that employs him/her has accepted as equivalent to a road test in accordance with section 391.33.

k. Has completed and furnished the motor carrier with an application for employment under section 391.21.

44. Admit or deny that Federal Motor Carrier Safety Regulation 383.110 states that "all drivers of commercial motor vehicles shall have knowledge and skills necessary to operate a commercial motor vehicle safely."

45. Admit or deny that Federal Motor Carrier Safety Regulations 383.111 and 383.113 set forth the knowledge and skills necessary for the safe operation of a commercial motor vehicle.

46. Admit or deny that drivers of commercial motor vehicles shall have knowledge and skills necessary to operate a commercial motor vehicle safely.

47. Admit or deny that your drivers have knowledge and skills necessary to operate a commercial motor vehicle safely.

48. Admit or deny that the driver involved in the incident made the basis of this lawsuit had the knowledge necessary to operate a commercial motor vehicle safely at all times during your employment of the driver.

49. Admit or deny that the driver involved in the incident made the basis of this lawsuit had the knowledge necessary to operate a commercial motor vehicle safely at all times during your employment of the driver.

50. Admit or deny that a driver is not qualified to operate a commercial vehicle under the Federal Motor Carrier Safety Regulations if that driver does not have the knowledge and skills set forth in sections 383.111 and 383.113.

51. Admit or deny that a driver is not qualified to operate a commercial vehicle for Defendant USA Truck, LLC if that driver does not have the knowledge and skills set forth in sections 383.111 and 383.113.

52. Admit or deny that Federal Motor Carrier Safety Regulation 391.41 states that "a person shall not drive a commercial motor vehicle unless he/she is physically qualified to do so."

53. Admit or deny that a driver is not allowed to drive for you unless the driver is physically qualified.

54. Admit or deny that a commercial carrier must allow only qualified drivers to drive.

55. Admit or deny that a commercial carrier must not allow unqualified drivers to drive.

56. Admit or deny that Federal Motor Carrier Safety Regulation 391.25 states that "each motor carrier shall, at least once every 12 months, make an inquiry into the driving record of each driver it employs, covering at least the preceding 12 months, to the appropriate agency of every State in which the driver held a commercial motor vehicle operator's license or permit during the time period."

57. Admit or deny that you should, at least once every 12 months, make an inquiry into the driving record of each driver you employ, covering at least the preceding 12 months, to the appropriate agency of every State in which the driver held a commercial motor vehicle operator's license or permit during the time period.

58. Admit or deny that Federal Motor Carrier Safety Regulation 391.25 states that "each motor carrier shall, at least once every 12 months, review the driving record of each driver it employs to determine whether that driver meets minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle."

59. Admit or deny that you, at least once every 12 months, review the driving record of each driver you employ to determine whether that driver meets minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle.

60. Admit or deny that Federal Motor Carrier Safety Regulation 391.25 states that "the motor carrier must consider the driver's accident record and any evidence that the driver has violated laws governing the operation of motor vehicles, and must give great weight to violations, such as speeding, reckless driving, and operating while under the influence of alcohol or drugs, that indicate that the driver has exhibited a disregard for the safety of the public."

61. Admit or deny that you consider the driver's accident record and any evidence that the driver has violated laws governing the operation of motor vehicles, and give great weight to violations, such as speeding, reckless driving, and operating while under the influence of alcohol or drugs, that indicate that the driver has exhibited a disregard for the safety of the public.

62. Admit or deny that Federal Motor Carrier Safety Regulation 391.25 requires a written record, including the date and the name of the person who reviewed the driving record, to be placed in the driver's qualification file.

63. Admit or deny that you conducted an annual review of the driver involved in the incident made the basis of this lawsuit in compliance with Federal Motor Carrier Safety Regulation 391.25.

64. Admit or deny that Federal Motor Carrier Safety Regulation 383.51 directs that a driver is disqualified from driving for the specified duration if the driver is convicted of any of the following while operating a commercial motor vehicle:

a. Driving while his/her alcohol concentration is 0.04% or more, or driving under the influence of alcohol as prescribed by state law, or refusing to undergo testing.

b. Operating under the influence of a controlled substance.

c. Leaving the scene of an accident involving a commercial motor vehicle.

d. Committing a felony involving a commercial motor vehicle.

e. Using a commercial motor vehicle to commit a felony involving manufacturing, distributing, or dispensing a drug.

65. Admit or deny that the driver involved in the incident made the basis of this lawsuit was disqualified from driving during his employment with you because he was convicted of one or more of the offenses listed in the previous request.

66. Admit or deny that Federal Motor Carrier Safety Regulation 383.51 mandates that a driver is disqualified from driving for the specified duration for committing a serous traffic violation and that a serious traffic violation is defined by Federal Motor Carrier Safety Regulation 383.5 to include:

a. Excessive speeding, which is 15 mph or more above the posted speed limit;

b. Reckless driving;

c. Improper lane changes;

d. Following too closely; and

e. A traffic violation arising in connection with a fatal traffic accident.

67. Admit or deny that the driver involved in the incident made the basis of this lawsuit was disqualified from driving during his employment with you because he committed one of the offenses listed in the previous request.

68. Admit or deny that Federal Motor Carrier Safety Regulation 383.51 mandates that a driver is disqualified from driving for the specified duration for violating out-of-service orders.

69. Admit or deny that the driver involved in the incident made the basis of this lawsuit was disqualified from driving during his employment with you because he violated an out-of-service order.

70. Admit or deny that Federal Motor Carrier Safety Regulation 383.51 mandates that a driver is disqualified from driving for specified railroad-highway grade crossings violations.

71. Admit or deny that the driver involved in the incident made the basis of this lawsuit was disqualified from driving during his employment with you because he violated the specified railroad-highway grade crossings offenses listed in Federal Motor Carrier Safety Regulation 383.51.

72. Admit or deny that a commercial driver who is disqualified shall not drive a commercial motor vehicle.

73. Admit or deny that a commercial carrier shall not require or permit a driver who is disqualified to drive a commercial motor vehicle.

74. Admit or deny that you require drivers that are disqualified to drive a commercial motor vehicle.

75. Admit or deny that you permit drivers that are disqualified to drive a commercial motor vehicle.

76. Admit or deny that Federal Motor Carrier Safety Regulation 383.51 states that "no motor carrier shall schedule a run nor permit nor require the operation of any commercial motor vehicle between points in such period of time as would necessitate the commercial motor vehicle being operated at speeds greater than those prescribed by the jurisdictions in or through which the commercial motor vehicle is being operated."

77. Admit or deny that you should not schedule a run nor permit nor require the operation of any commercial motor vehicle between points in such period of time as would necessitate the commercial motor vehicle being operated at speeds greater than those prescribed by the jurisdictions in or through which the commercial motor vehicle is being operated.

78. Admit or deny that Federal Motor Carrier Safety Regulation 390.13 mandates that a motor carrier should not aid, abet, encourage, or require its employees to violate any of the Federal Motor Carrier Safety Regulations.

79. Admit or deny that you should not aid, abet, encourage, or require your employees to violate any of the Federal Motor Carrier Safety Regulations.

80. Admit or deny that Section 395 of the Federal Motor Carrier Safety Regulations sets the limitation on the time that a driver can be in the service of a commercial carrier.

81. Admit or deny that you require compliance by your drivers with the hours of service limitation set forth in Section 395 of the Federal Motor Carrier Safety Regulations.

82. Admit or deny that compliance by your drivers with the hours of service limitation set forth in Section 395 of the Federal Motor Carrier Safety Regulations is mandatory.

83. Admit or deny that a driver is disqualified if the driver is operating outside of the specific hour of service limitations set forth in Section 395 of the Federal Motor Carrier Safety Regulations.

84. Admit or deny that you allow your drivers to operate outside of the specific hour of service limitations set forth in Section 395 of the Federal Motor Carrier Safety Regulations.

85. Admit or deny that one of the purposes of the hours of service regulations found in Section 395 of the Federal Motor Carrier Safety Regulations is to keep fatigued drivers off the highway.

86. Admit or deny that Federal Motor Carrier Safety Regulation 395.8 states that "each motor carrier shall maintain records of duty status and all supporting documents for each driver it employs for a period of six months from the date of receipt."

87. Admit or deny that you maintain records of duty status for each driver you employ for a period of six months from the date of receipt.

88. Admit or deny that the Federal Motor Carrier Safety Regulations define the term "supporting documents" as "the records of the motor vehicle carrier which remain maintained in the ordinary course of business and used by the motor carrier to verify the information recorded on the driver's record of duty status."

89. Admit or deny that you maintain all supporting documents for duty status records for each driver you employ for a period of six months from the date of receipt.

90. Admit or deny that a commercial carrier should review a driver's records of duty status to insure that the driver was in compliance with the hours of service regulations found in Section 395 of the Federal Motor Carrier Safety Regulations.

91. Admit or deny that a commercial carrier should review all supporting documents for a driver's records of duty status to insure that the driver was in compliance with the hours of service regulations found in Section 395 of the Federal Motor Carrier Safety Regulations.

92. Admit or deny that you reviewed the records of duty status for the driver involved in the incident made the basis of this lawsuit during the driver's employment with you in order to insure that the driver was in compliance with the hours of service regulations found in Section 395 of the Federal Motor Carrier Safety Regulations.

93. Admit or deny that you reviewed the supporting documents for the records of duty status for the driver involved in the incident made the basis of this lawsuit during the driver's employment with you in order to insure that the driver was in compliance with the hours of service regulations found in Section 395 of the Federal Motor Carrier Safety Regulations.

94. Admit or deny that the records of duty status for the driver involved in the incident made the basis of this lawsuit during the driver's employment with you show violations of the hours of service regulations found in Section 395 of the Federal Motor Carrier Safety Regulations.

95. Admit or deny that the driver involved in the incident made the basis of this lawsuit was never admonished during the driver's employment with you about any violations of the hours of service regulations found in Section 395 of the Federal Motor Carrier Safety Regulations.

96. Admit or deny that Federal Motor Carrier Safety Regulation 395.8 states that a commercial driver has an obligation to stop driving when his "ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle."

97. Admit or deny that Federal Motor Carrier Safety Regulation 395.8 mandates that a commercial carrier is prohibited from requiring or allowing the driver to operate when the drivers "ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle."

98. Admit or deny that you require drivers to operate when their ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle.

99. Admit or deny that you permit drivers to operate when their ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle.

100. Admit or deny that the accident made the basis of this lawsuit was "DOT Recordable or Reportable" as defined by the Federal Motor Carrier Safety Regulations.

101. Admit or deny that an alcohol test was conducted on the driver involved in the incident made the basis of this lawsuit after the accident.

102. Admit or deny that the alcohol test conducted on the driver involved in the incident made the basis of this lawsuit after the accident detected the presence of alcohol.

103. Admit or deny that a controlled substance test was conducted on the driver involved in the incident made the basis of this lawsuit after the accident.

104. Admit or deny that the controlled substance test conducted on the driver involved in the incident made the basis of this lawsuit after the accident detected the presence of a controlled substance.

105. Admit or deny that a pre-employment alcohol test, as defined by the Federal Motor Carrier Safety Regulations, was conducted on the driver involved in the incident made the basis of this lawsuit.

106. Admit or deny that the pre-employment alcohol test, as defined by the Federal Motor Carrier Safety Regulations, conducted on the driver involved in the incident made the basis of this lawsuit detected the presence of alcohol.

107. Admit or deny that a pre-employment controlled substance test, as defined by the Federal Motor Carrier Safety Regulations, was conducted on the driver involved in the incident made the basis of this lawsuit.

108. Admit or deny that the pre-employment controlled substance test, as defined by the Federal Motor Carrier Safety Regulations, conducted on the driver involved in the incident made the basis of this lawsuit detected the presence of a controlled substance.

109. Admit or deny that a random alcohol test, as defined by the Federal Motor Carrier Safety Regulations, was conducted on the driver involved in the incident made the basis of this lawsuit during his employment with you.

110. Admit or deny that the random alcohol test, as defined by the Federal Motor Carrier Safety Regulations, conducted on the driver involved in the incident made the basis of this lawsuit detected the presence of alcohol.

111. Admit or deny that a random controlled substance test, as defined by the Federal Motor Carrier Safety Regulations, was conducted on the driver involved in the incident made the basis of this lawsuit during his employment with you.

112. Admit or deny that the random controlled substance test, as defined by the Federal Motor Carrier Safety Regulations, conducted on the driver involved in the incident made the basis of this lawsuit detected the presence of a controlled substance.

113. Admit or deny that a reasonable suspicion alcohol test, as defined by the Federal Motor Carrier Safety Regulations, was conducted on the driver involved in the incident made the basis of this lawsuit during his employment with you.

114. Admit or deny that the reasonable suspicion alcohol test, as defined by the Federal Motor Carrier Safety Regulations, conducted on the driver involved in the incident made the basis of this lawsuit detected the presence of alcohol.

115. Admit or deny that a reasonable suspicion controlled substance test, as defined by the Federal Motor Carrier Safety Regulations, was conducted on the driver involved in the incident made the basis of this lawsuit during his employment with you.

116. Admit or deny that the reasonable suspicion controlled substance test, as defined by the Federal Motor Carrier Safety Regulations, conducted on the driver involved in the incident made the basis of this lawsuit detected the presence of a controlled substance.

117. Admit or deny that you kept an Accident Register, as defined by the Federal Motor Carrier Safety Regulations, that includes on it the incident made the basis of this lawsuit.

118. Admit or deny that you were required by the Federal Motor Carrier Safety Regulations to review the incident made the basis of this lawsuit in order to determine whether the accident was preventable on the part of your driver.

119. Admit or deny that you did review the incident made the basis of this lawsuit in order to determine whether the accident was preventable on the part of your driver.

120. Admit or deny that your review of the incident made the basis of this lawsuit concluded that the accident was non-preventable on the part of your driver.

121. Admit or deny that the incident made the basis of this lawsuit was nonpreventable on the part of your driver.

/s Davis L. Middlemas
Davis L. Middlemas (MID007)
Attorney for Plaintiff

OF COUNSEL:
Morris Bart & Associates, LLC
Shipt Tower
420 North 20th Street
Suite 2750
Birmingham, AL 35203
(205) 484-0900
dmiddlemas@morrisbart.com

**PLEASE SERVE WITH COMPLAINT**

ELECTRONICALLY FILED
4/1/2022 3:53 PM
01-CV-2022-900975.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## BIRMINGHAM DIVISION

| | |
|---|---|
| **RONNIE HILL, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.:** |
| | ) |
| **CHRISTOPHER PATTERSON;** | ) |
| **USA TRUCK, LLC;** | ) |
| **AND THOSE OTHER PERSONS,** | ) |
| **CORPORATIONS, AND/OR OTHER LEGAL** | ) |
| **ENTITIES DESIGNATED HEREIN AS** | ) |
| **FICTITIOUS PARTIES,** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS
## TO DEFENDANT USA TRUCK, LLC

COMES NOW the Plaintiff pursuant to Alabama Rule of Civil Procedure 34 and hereby requests the Defendant USA Truck, LLC to produce the following documents or things within the time allowed by ARCP 34 (b)(1)(B).

A.  These discovery requests are continuing in character so as to require you to file supplementary answers if you obtain additional or different information before trial.
B.  If after conducting a reasonable investigation you cannot answer an Interrogatory, you should so state and answer to the extent that you can, stating what information you do have, what information you cannot provide and stating the efforts to locate and obtain the unknown information.

## DEFINITIONS

For the purposes of these Requests and as used herein, unless otherwise specified, the following words shall have, and be construed with reference to, the following meanings and definitions:

1)  "Identify" when used in reference to a natural person shall mean to state his or her full name and current or last known residence address, current employer, and current business address; when used with respect to a document (as hereinafter defined) "identify" means to state the date, subject or substance, author, all recipients, type of documents (e.g., as defined below), its present location, and the identity of each of its current custodians, and shall include documents (a) with respect to which a privilege is, or may be, claimed and (b) documents which have been destroyed, lost, misplaced or damaged; when used in reference to an occurrence shall mean to state facts, dates, documents, people, and places that are needed to

fully explain the occurrence.

2) "Document" and "documents" shall include, without limitation, every written, printed or digital version of: any paper, letter, text, form, pamphlet, brochure, email, fax, facsimile transmission, drawing, picture, photograph, negative, slide, movie, film, video, audio transcription or record, memorandum, manuals, test, testing results, chart, report, statement, article, note, receipt, contract, agreement, form, work sheet, journal, ledger, file, book, microfilm, audio recording, video recording; driver's daily log book(s); Motor Carrier Time records; travel records, documents and reports, including driver's trip envelopes and/or trip reports, daily loads or work reports, fuel purchase reports, border crossing reports, customs declarations, driver reports, vehicle inspection reports, gate receipts, International Registration Program documents, International Fuel Tax Agreement documents, over/short & damage reports, overweight/oversize reports and citations, out-of-service reports and orders, state entry and departure records, ports of entry receipts, weight/scale reports, or any other reports made by the driver; trip expense documents, records, reports and receipts for expenses, regardless of type, including cash advance receipts, fuel, credit card and debit card receipts and statements, expense vouchers, fuel billing statements, fuel receipts, equipment purchase receipts, lodging receipts, expense sheets, toll receipts, weight/scale receipt, food purchase receipts, all expense sheets and any other trip expense receipts; all pick-up and delivery records used to request the transport of commerce whether prepared by a defendant, broker, shipper or receiver, motor carrier, driver, or other person or organization; all bills of lading and delivery manifests prepared or issued by any shipper, broker, transporting motor carrier, receiver of cargo, or defendant. This also includes copies of bills of lading and manifests that show signed receipts for cargo along with dates and times of cargo pickup and delivery; all equipment or cargo loading, unloading or detention records, along with any other document showing pickup and delivery date and time, or detention of equipment or cargo; all written or electronic instructions communicated to the driver in reference to cargo transported, route to travel and pickup or delivery time, whether by any defendant, broker, shipper or receiver, or other person or organization; all written or electronic dispatch records indicating assignments of commercial motor vehicles equipment and drivers for cargo pickup and delivery, including the location of pick-up and delivery, and the date and time of pickup and delivery of pickup; any driver's call in records or other written or electronic records indicating communications between company and driver in reference to the movement of cargo, or the day-to-day operation of the equipment and/or driver; all accounting records, cargo transportation bills, and subsequent payment or other records indicating billing for transportation of cargo and subsequent payment for the transportation of cargo; all initial or rough driver's trip check settlement sheets along with all documents, reports or summaries showing payment to the driver; any and all motor carrier or driver created fuel, mileage, and purchase reports or records; copies of the original Com check, cash control, or similar service records and copies of front and back of all checks received or disbursed in reference to the transportation performed regardless of disbursement reason, inclusive of all checks to drivers; any and all documents, records or reports showing the location and time of fuel purchases and mileage for the date indicated, whether listed by driver name or number or "Commercial Motor Vehicle" number; any and all documents pertaining to rental or lease agreements for the commercial motor vehicle or any equipment use on the commercial motor vehicle; any and all special or oversized permits and related documents/requests issued to, or by, any state agency to transport cargo over their territory regardless of the form of the cargo;

accident packages, pictures, witness statement forms, driver statement forms, waiver of liability forms, accident and incident forms; and any and all driver's vehicle inspection reports required by Federal Motor Carrier Safety Regulation § 396.11.

3) "Correspondence" shall mean any written, printed or digital communication, transmission, letter, email, fax, facsimile, text, message, voicemail, memorandum, or note.

4) "You" or "your" shall mean any named Defendant, any fictitious Defendant and/or its affiliates, subsidiaries, its present or future officers, directors, agents, employees, and any other persons acting or purporting to act for or on its or its parents', affiliates' or subsidiaries behalf.

5) Person" or "individual" includes individuals, corporations, firms, sole proprietorships, partnerships, associations, trusts and governmental agencies, bodies and officials.

6) "Facts" include, but are not limited to, events, transactions, and occurrences, the locations of such events, transactions, or occurrences, all of which concern (as hereinabove defined), or are concerned with, in any way whatsoever, directly or indirectly, the interrogatory subject.

7) "Incident" shall mean the facts and circumstances giving rise to the allegations made the basis of this lawsuit.

8) "Plaintiff" shall mean any named Plaintiffs.

9) "FMCSA" shall mean the Federal Motor Carrier Safety Administration.

10) "FMCSR" shall mean the Federal Motor Carrier Safety Regulations applicable to interstate operations of commercial motor vehicles in the United States and shall include the State of Alabama's adoption of the Federal Motor Carrier Safety Regulations for the intrastate operation of commercial motor vehicles pursuant to *Ala. Code* § 32-9A-2 (1975).

11) "Driver File" shall mean a "Driver Qualification File" and a "Driver Personnel File" and shall include, without limitation, every written, printed or digital version of the following: Application for employment; All medical examinations and certification of medical examination cards; Driver's violations statements for each twelve month period of employment; Driver's road test; Driver's written test; Road and written test certifications issued by any Defendant or other organization; All past employment inquiries sent to former employers and their responses; Inquiries and answers on driver's license records of violations and accidents; directed to and received from any state agencies; Copies of all commercial driver's licenses that the driver possessed when applying with and working for any Defendant; Copies of all road or written test cards, medical cards, motor carrier certification of driver qualifications, and any other cards given to driver by defendant or any other motor carrier; Any hiring, retention, admonishment, termination, or warning notices and other disciplinary type documents; Any prior industrial, vehicular, cargo, or other types of accidents or losses, including any reports of cargo, loss of shortage of work, and related documents to each incident; Any customer, employee or any other individual complaints regarding the driver; Any documents of a legal nature, exclusive of driving citations, such as court notices, garnishments, arrest records, probation records, bankruptcy records or any other legal document; and All other documents, regardless of origin or subject, maintained by the defendant in reference to the driver.

12) "Duty Status Records" means a Driver's Daily Log as required by FMCSR § 395.8 or Motor Carrier Time records required by FMCSR § 395.1(e)(1)(v) or Motor Carrier Time records required by FMCSR § 395.1(e)(2)(ix).

13) "Supporting Documents" would be any documents that could be used by the motor carrier to verify the information on the driver's duty status records. These would include the

3

documents listed by the FMCSA in their *Policy on the Retention of Supporting Documents*: "bills of lading, carrier pros, freight bills, dispatch records, electronic mobile communication/tracking records, gate record receipts, weigh/scale tickets, fuel receipts, fuel billing statements, toll receipts, toll billing statements, port of entry receipts, delivery receipts, lumper receipts, interchange and inspection reports, lessor settlement sheets, over/ short and damage reports, agricultural inspection reports, driver and vehicle examination reports, crash reports, telephone billing statements, credit card receipts, border crossing reports, customs declarations, traffic citations and overweight/oversize permits and traffic citations." *Federal Register*: Volume 75, Number 111, Page 32984-32987 (June 10, 2010).

14) "Hours of Service" shall mean the limitations on the time that a driver can be in the service of a "Motor Carrier", as set forth in FMCSR 395, et seq. and as adopted by *Ala. Code* § 32-9A-2 (1975).

15) "Commercial Motor Vehicle" means any self-propelled or towed motor vehicle used on the roadway transport passengers or property when the vehicle: has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater; or is designed or used to transport more than 8 passengers (including the driver) for compensation; or is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or is used in transporting material found to be hazardous under 49 U.S.C. 5103 and transported in a quantity requiring placarding under regulations prescribed 49 CFR, subtitle B, chapter I, subchapter C. "Commercial motor vehicle" shall include any of the following: "Truck Tractor" or ("Tractor") is used to pull one or more trailer(s); Trailer is a vehicle built for hauling cargo, such as a pole trailer, a tanker, a lowboy, a flatbed, a box trailer, a car hauler, etc.; Straight Truck is a single-unit vehicle with the engine, cab and cargo compartments all on the same frame; "Passenger Vehicle" is any motor vehicle designed, constructed and used for the transportation of people; and "Placarded Vehicle" means any type vehicle transporting hazardous materials requiring the vehicle to display warning placards.

16) "Motor Carrier" shall include a "For-hire Motor Carrier", a "Common Motor Carrier", a "Contract Motor Carrier", an "Exempt Motor Carrier" or a "Private Motor Carrier". The term includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of "Commercial Motor Vehicles" and its equipment and/or accessories. A "For-hire Motor Carrier" is one who provides transportation of property or passengers to individuals and businesses. A "Common Motor Carrier" is one who provides transportation of property or passengers to any and all individuals and businesses. A "Contract Motor Carrier" is one who, under a contract, provides transportation of property or passengers only to specific individuals and businesses. A "Private Motor Carrier" is one who provides transportation of their own property or their own passengers with their own "Commercial Motor Vehicles." An "Exempt Motor Carrier" is one provides transportation of a exempt commodity and is, thereby, exempt from economic regulation by FMCSA but is still subject to the safety regulations set forth in the FMCSR.

17) A "Broker", "Freight Forwarder", "Transportation Logistics Company", or "Transportation Intermediary" shall mean a person or company that organizes transportation of cargo, goods or freight by "Commercial Motor Vehicle" for individuals or corporations. A "Broker",

"Freight Forwarder", "Transportation Logistics Company", or "Transportation Intermediary" contracts with "Motor Carriers" move the cargo, goods or freight.

18) A "Shipper" shall mean a person or company that for whom the cargo, goods or freight are being transported by a "Motor Carrier."

19) "Out-of-Service" shall mean a declaration by an authorized enforcement officer of a Federal, State, Canadian, Mexican, or local jurisdiction that a driver, a commercial motor vehicle, or a motor carrier operation, is out-of-service pursuant to FMCSR §§386.72, 392.5, 395.13, 396.9, or compatible laws, or the North American Uniform Out-of-Service Criteria.

20) "Accident Register" shall mean record containing a list of all wrecks involving "Motor Carrier" drivers and/or "Commercial Motor Vehicles" that contains the following information and documents, as required by FMCSR § 390.15 and as adopted by Ala. Code § 32-9A-2 (1975): Date of the accident; City or town, or most near, where the accident occurred and the State where the accident occurred; Driver Name; Number of injuries; Number of fatalities; Whether hazardous materials, other than fuel spilled from the fuel tanks of motor vehicle involved in the accident, were released; and Copies of all accident reports.

21) "Computerized fleet management system" shall mean a satellite-based communication and positioning system, a driver performance data system, a vehicle diagnostic information system, an asset utilization system, a vehicle two-way or cab communication system, a computer log system, an in-vehicle computer system, a mobile communication system, log management system, paperless log system, a log scanner system, electronic logbook management system, data logging unit or any other similar type system used to compile data or communications of vehicles.

22) "On-board data recording device" shall mean any engine data recording device, electronic control module or unit (ECM/ECU), sensing diagnostic module or unit (SDM/SDU), traditional or computerized tachograph, radar collision warning system, transponder, log management system, paperless log system, electronic logbook management system, data logging, electronic mobile communication and tracking technology or any other similar type system used to compile data.

## REQUESTS FOR PRODUCTION

1. Produce for inspection and copying any and all personnel, employee or driver handbooks or manuals, safety or standard operating procedure manual, orientation or new employee manuals, and/or training and educational materials, texts, brochures, pamphlets, forms or any other such documents that pertain to or were used at any time during the employment of the driver involved in the incident made the basis of the lawsuit.  This request is inclusive of all replaced, amended or updated documents, all amendments, changes and supplements to such documents, and all proposed amendments, changes and supplements that were not adopted.

2. Produce for inspection and copying any and all hiring policies and procedures or any other such documents that pertain to or were used at any time during the employment of the driver involved in the incident made the basis of the lawsuit. This request is inclusive of all replaced, amended or updated documents, all amendments, changes and supplements to such documents, and all proposed amendments, changes and supplements that were not adopted.

3. Produce for inspection and copying any and all documents regarding any post-accident alcohol and controlled substance testing done on the driver of the "Commercial Motor Vehicle" involved in the incident mage the basis of the Complaint.

4. Produce for inspection and copying any and all documents dealing with drug or alcohol tests conducted on the driver of the "Commercial Motor Vehicle" involved in the incident mage the basis of the Complaint at all times during his employment with your company.

5. Produce for inspection and copying any and all documents which pertained to your alcohol and drug testing program for a period of three years prior to the date of the incident made the basis of plaintiff's Complaint until the date of this request.

6. Produce for inspection and copying the "Driver File", as defined above.

7. Produce for inspection and copying all "Duty Status Records" and "Supporting Documents" for any work done by the driver of the "Commercial Motor Vehicle" involved in the incident made the basis of the Complaint for any Defendant for a period of six months prior to and including the date of the wreck. "Duty Status Records" and "Supporting Documents" would be any documents defined above.

8. Produce for inspection and copying any and all documents pertaining or related in any way to audits conducted of the driver's "Duty Status Records" and "Supporting Documents" for work done for any Defendant for a period of six months prior to and including the date of the wreck made the basis of the Complaint.  "Duty Status Records" and "Supporting Documents" would be any documents defined above.

9. Produce for inspection and copying any and all documents that explain the procedures and methods used by the "Motor Carrier" to audit, analyze and determine whether a driver's "Duty Status Records" and "Supporting Documents" show that he is complying with the "Hours of Service" requirements, including, but not limited to, any computer software and all reports generated thereby.

10. Produce for inspection and copying any and all paychecks for the driver involved in the incident made the basis of the lawsuit for a period of six months prior to the date of the wreck made the basis of this lawsuit, including all documentation used to compile the amount of the paycheck.

11. Produce for inspection and copying any and all documents regarding a  preventability decision for the accident in question, as well as any preventability decision resulting from any accident involving the driver during the incident made the basis of the lawsuit at all times during his employment with you, including all accident review policies and procedures for determining whether any accident is chargeable or non-chargeable, preventable or non-preventable and all documents reviewed or provided to the accident review committee.

6

12. Produce for inspection and copying any and all documents that pertain to the driver of the "Commercial Motor Vehicle", the "Commercial Motor Vehicle" or the "Motor Carrier" being placed "Out-of-Service."

13. Produce for inspection and copying any and all local, state, or federal agencies' investigative reports of this incident made the basis of the lawsuit, and any other incident involving the driver of the "Commercial Motor Vehicle" involved in the incident made the basis of this lawsuit.

14. Produce for inspection and copying any and all documents pertaining to audits or inspections conducted by any local, state or federal agency of the "Motor Carrier" for a period of 10 years prior to the incident made the basis of the lawsuit.

15. Produce for inspection and copying any and all documents that pertain to audits or inspections conducted by any consultant company hired by this defendant for a period of 10 years prior to the incident made the basis of the lawsuit.

16. Produce for inspection and copying any and all documents that pertain to any and all safety ratings assigned by any local, state or federal agency to you since you have been operating as "Motor Carrier."

17. Produce for inspection and copying any and all insurance policies, both primary and excess, for the driver, the tractor, the trailer or the "Commercial Motor Vehicle."

18. Produce for inspection and copying any and all documents pertaining to any expert employed on your behalf in the lawsuit.  Produce for inspection and copying said expert's entire file relating to the above-captioned case, including, but not limited to, any and all records, handwritten notes, calculations, results of research and investigation, records, reports, correspondence, memoranda, questionnaires, testing and testing results, photographs, video tapes, diagrams, charts, bills rendered and statements of charges, as well as any and all other materials in his possession pertaining to his evaluation of the incident made the basis of the lawsuit.

19. Produce for inspection and copying any and all agreements, contracts, leases or correspondence of any kind or character relating to your business relationship with any owner of any "Commercial Motor Vehicle" involved in the incident made the basis of the lawsuit, any "Motor Carrier", "Shipper", "Broker", "Freight Forwarder", "Transportation Logistics Company", or "Transportation Intermediary" and any other person or entity having any interest of any kind or character in the "Commercial Motor Vehicle" or any goods, cargo, or freight thereon at the time of the incident made the basis of the lawsuit.

20. Produce for inspection and copying your company's certificate of authority, license and/or permit authorizing it to engage in interstate and/or intrastate commerce.

21. Produce for inspection and copying any and all safety meeting attendance registers or sign-in sheets for all safety meetings available to be attended by the driver involved in the

incident made the basis of the lawsuit.

22. Produce for inspection and copying any and all safety meeting documents for all safety meetings available to be attended by the driver involved in the incident made the basis of the lawsuit.

23. Produce for inspection and copying any and all documents generated or used by the driver as a result of the wreck made the basis of the lawsuit.  This request includes, but is not limited to, accident packages, pictures, witness statement forms, driver statement forms, waiver of liability forms, accident and incident forms, or all other documents created by the driver involved in the incident made the basis of the lawsuit.

24. Produce for inspection and copying the complete inspection, equipment and maintenance files on the tractor, on the trailer and/or on the "Commercial Motor Vehicle" involved in the incident made the basis of the lawsuit including, but not limited to, any inspections, repairs, or maintenance, as well as daily inspection and condition reports and all schedules of routine vehicle maintenance on the tractor, the trailer and/or on the "Commercial Motor Vehicle" pursuant to FMCSR § 396, et seq. and *Ala. Code* § 32-9A-2 (1975).

25. Produce for inspection and copying any and all "Accident Registers" that include on them the incident made the basis of Plaintiff's Complaint, as well as any other "Accident Registers" that include accidents involving the driver of the "Commercial Motor Vehicle" involved in the incident made the basis of the lawsuit.  "Accident Register" is defined above.  Your production should include copies of all accident reports, as required by FMCSR § 390.15 and as adopted by Ala. Code § 32-9A-2 (1975).

26. Produce for inspection and copying any and all photographs taken or made by you or on your behalf, or in your possession, relating to the incident made the basis of the lawsuit.

27. Produce for inspection and copying any and all documents generated or used by a "Computerized Fleet Management System" or "On-board Data Recording Device" for the day of the wreck made basis of the Complaint.

28. Produce for inspection and copying the registration and title to the "Tractor", the "Trailer" or "Commercial Motor Vehicle."

29. Produce for inspection and copying any and all exhibits, documents, articles or things that you intend to offer or use in the trial of this case to demonstrate, illustrate, aid or assist the testimony of any witnesses, including models or facsimiles or subjects or articles.

30. Produce for inspection and copying any and all signed or unsigned statements of any kind or character taken by you or on your behalf from any plaintiff.

*/s Davis L. Middlemas*

Davis L. Middlemas (MID007)
Attorney for Plaintiff

OF COUNSEL:
Morris Bart & Associates, LLC
Shipt Tower
420 North 20th Street
Suite 2750
Birmingham, AL 35203
(205) 484-0900
dmiddlemas@morrisbart.com

**PLEASE SERVE WITH COMPLAINT**

ELECTRONICALLY FILED
4/1/2022 3:53 PM
01-CV-2022-900975.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**
**BIRMINGHAM DIVISION**

| | |
|---|---|
| **RONNIE HILL, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.:** |
| | ) |
| **CHRISTOPHER PATTERSON;** | ) |
| **USA TRUCK, LLC;** | ) |
| **AND THOSE OTHER PERSONS,** | ) |
| **CORPORATIONS, AND/OR OTHER LEGAL** | ) |
| **ENTITIES DESIGNATED HEREIN AS** | ) |
| **FICTITIOUS PARTIES,** | ) |
| | ) |
| **Defendants.** | ) |

### PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS
### TO DEFENDANT CHRISTOPHER PATTERSON

COMES NOW the Plaintiff pursuant to Alabama Rule of Civil Procedure 34 and hereby requests the Defendant Christopher Patterson, to produce the following documents or things within the time allowed by ARCP 34 (b)(1)(B).

A. These discovery requests are continuing in character so as to require you to file supplementary answers if you obtain additional or different information before trial.
B. If after conducting a reasonable investigation you cannot answer an Interrogatory, you should so state and answer to the extent that you can, stating what information you do have, what information you cannot provide and stating the efforts to locate and obtain the unknown information.

### DEFINITIONS

For the purposes of these Requests and as used herein, unless otherwise specified, the following words shall have, and be construed with reference to, the following meanings and definitions:

(1) "Identify" when used in reference to a natural person shall mean to state his or her full name and current or last known residence address, current employer, and current business address; when used with respect to a document (as hereinafter defined) "identify" means to state the date, subject or substance, author, all recipients, type of documents (e.g., as defined below), its present location, and the identity of each of its current custodians, and shall include documents (a) with respect to which a privilege is, or may be, claimed and (b) documents which have been destroyed, lost, misplaced or damaged; when used in reference to an occurrence shall mean to state facts, dates, documents, people, and places that are needed to

1

fully explain the occurrence.

(2) "Document" and "documents" shall include, without limitation, every written, printed or digital version of: any paper, letter, text, form, pamphlet, brochure, email, fax, facsimile transmission, drawing, picture, photograph, negative, slide, movie, film, video, audio transcription or record, memorandum, manuals, test, testing results, chart, report, statement, article, note, receipt, contract, agreement, form, work sheet, journal, ledger, file, book, microfilm, audio recording, video recording; driver's daily log book(s); Motor Carrier Time records; travel records, documents and reports, including driver's trip envelopes and/or trip reports, daily loads or work reports, fuel purchase reports, border crossing reports, customs declarations, driver reports, vehicle inspection reports, gate receipts, International Registration Program documents, International Fuel Tax Agreement documents, over/short & damage reports, overweight/oversize reports and citations, out-of-service reports and orders, state entry and departure records, ports of entry receipts,  weight/scale reports, or any other reports made by the driver; trip expense documents, records, reports and receipts for expenses, regardless of type, including cash advance receipts, fuel, credit card and debit card receipts and statements, expense vouchers, fuel billing statements, fuel receipts, equipment purchase receipts, lodging receipts, expense sheets, toll receipts, weight/scale receipt,  food purchase receipts, all expense sheets and any other trip expense receipts; all pick-up and delivery records used to request the transport of commerce whether prepared by a defendant, broker,  shipper or receiver, motor carrier, driver, or other person or organization; all bills of lading and delivery manifests prepared or issued by any shipper, broker, transporting motor carrier, receiver of cargo, or defendant.   This also includes copies of bills of lading and manifests that show signed receipts for cargo along with dates and times of cargo pickup and delivery; all equipment or cargo loading, unloading or detention records, along with any other document showing pickup and delivery date and time, or detention of equipment or cargo; all written or electronic instructions communicated to the driver in reference to cargo transported, route to travel and pickup or delivery time, whether by any defendant, broker, shipper or receiver, or other person or organization; all written or electronic dispatch records indicating assignments of commercial motor vehicles equipment and drivers for cargo pickup and delivery, including the location of pick-up and delivery, and the date and time of pickup and delivery of pickup; any driver's call in records or other written or electronic records indicating communications between company and driver in reference to the movement of cargo, or the day-to-day operation of the equipment and/or driver; all accounting records, cargo transportation bills, and subsequent payment or other records indicating billing for transportation of cargo and subsequent payment for the transportation of cargo; all initial or rough driver's trip check settlement sheets along with all documents, reports or summaries showing payment to the driver; any and all motor carrier or driver created fuel, mileage, and purchase reports or records; copies of the original Com check, cash control, or similar service records and copies of front and back of all checks received or disbursed in reference to the transportation performed regardless of disbursement reason, inclusive of all checks to drivers; any and all documents, records or reports showing the location and time of fuel purchases and mileage for the date indicated, whether listed by driver name or number or "Commercial Motor Vehicle" number; any and all documents pertaining to rental or lease agreements for the commercial motor vehicle or any equipment use on the commercial motor vehicle; any and all special or oversized permits and related documents/requests issued to, or by, any state agency to transport cargo over their territory regardless of the form of the cargo; accident

packages, pictures, witness statement forms, driver statement forms, waiver of liability forms, accident and incident forms; and any and all driver's vehicle inspection reports required by Federal Motor Carrier Safety Regulation § 396.11.

(3) "Correspondence" shall mean any written, printed or digital communication, transmission, letter, email, fax, facsimile, text, message, voicemail, memorandum, or note.

(4) "You" or "your" shall mean any named Defendant, any fictitious Defendant and/or its affiliates, subsidiaries, its present or future officers, directors, agents, employees, and any other persons acting or purporting to act for or on its or its parents', affiliates' or subsidiaries behalf.

(5) Person" or "individual" includes individuals, corporations, firms, sole proprietorships, partnerships, associations, trusts and governmental agencies, bodies and officials.

(6) "Facts" include, but are not limited to, events, transactions, and occurrences, the locations of such events, transactions, or occurrences, all of which concern (as hereinabove defined), or are concerned with, in any way whatsoever, directly or indirectly, the interrogatory subject.

(7) "Incident" shall mean the facts and circumstances giving rise to the allegations made the basis of this lawsuit.

(8) "Plaintiff" shall mean any named Plaintiffs.

(9) "FMCSA" shall mean the Federal Motor Carrier Safety Administration.

(10)    "FMCSR" shall mean the Federal Motor Carrier Safety Regulations applicable to interstate operations of commercial motor vehicles in the United States and shall include the State of Alabama's adoption of the Federal Motor Carrier Safety Regulations for the intrastate operation of commercial motor vehicles pursuant to *Ala. Code* § 32-9A-2 (1975).

(11)    "Driver File" shall mean a "Driver Qualification File" and a "Driver Personnel File" and shall include, without limitation, every written, printed or digital version of the following: Application for employment; All medical examinations and certification of medical examination cards; Driver's violations statements for each twelve month period of employment; Driver's road test; Driver's written test; Road and written test certifications issued by any Defendant or other organization; All past employment inquiries sent to former employers and their responses; Inquiries and answers on driver's license records of violations and accidents; directed to and received from any state agencies; Copies of all commercial driver's licenses that the driver possessed when applying with and working for any Defendant; Copies of all road or written test cards, medical cards, motor carrier certification of driver qualifications, and any other cards given to driver by defendant or any other motor carrier; Any hiring, retention, admonishment, termination, or warning notices and other disciplinary type documents; Any prior industrial, vehicular, cargo, or other types of accidents or losses, including any reports of cargo, loss of shortage of work, and related documents to each incident; Any customer, employee or any other individual complaints regarding the driver; Any documents of a legal nature, exclusive of driving citations, such as court notices, garnishments, arrest records, probation records, bankruptcy records or any other legal document; and All other documents, regardless of origin or subject, maintained by the defendant in reference to the driver.

(12)    "Duty Status Records" means a Driver's Daily Log as required by FMCSR § 395.8 or Motor Carrier Time records required by FMCSR § 395.1(e)(1)(v) or Motor Carrier Time records required by FMCSR § 395.1(e)(2)(ix).

(13)    "Supporting Documents" would be any documents that could be used by the motor carrier to verify the information on the driver's duty status records. These would include the

3

documents listed by the FMCSA in their *Policy on the Retention of Supporting Documents*: "bills of lading, carrier pros, freight bills, dispatch records, electronic mobile communication/tracking records, gate record receipts, weigh/scale tickets, fuel receipts, fuel billing statements, toll receipts, toll billing statements, port of entry receipts, delivery receipts, lumper receipts, interchange and inspection reports, lessor settlement sheets, over/ short and damage reports, agricultural inspection reports, driver and vehicle examination reports, crash reports, telephone billing statements, credit card receipts, border crossing reports, customs declarations, traffic citations and overweight/oversize permits and traffic citations." *Federal Register*: Volume 75, Number 111, Page 32984-32987 (June 10, 2010).

(14)   "Hours of Service" shall mean the limitations on the time that a driver can be in the service of a "Motor Carrier", as set forth in FMCSR 395, et seq. and as adopted by *Ala. Code* § 32-9A-2 (1975).

(15)   "Commercial Motor Vehicle" means any self-propelled or towed motor vehicle used on the roadway transport passengers or property when the vehicle: has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater; or is designed or used to transport more than 8 passengers (including the driver) for compensation; or is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or is used in transporting material found to be hazardous under 49 U.S.C. 5103 and transported in a quantity requiring placarding under regulations prescribed 49 CFR, subtitle B, chapter I, subchapter C. "Commercial motor vehicle" shall include any of the following: "Truck Tractor" or ("Tractor") is used to pull one or more trailer(s); Trailer is a vehicle built for hauling cargo, such as a pole trailer, a tanker, a lowboy, a flatbed, a box trailer, a car hauler, etc.; Straight Truck is a single-unit vehicle with the engine, cab and cargo compartments all on the same frame; "Passenger Vehicle" is any motor vehicle designed, constructed and used for the transportation of people; and "Placarded Vehicle" means any type vehicle transporting hazardous materials requiring the vehicle to display warning placards.

(16)   "Motor Carrier" shall include a "For-hire Motor Carrier", a "Common Motor Carrier", a "Contract Motor Carrier", an "Exempt Motor Carrier" or a "Private Motor Carrier". The term includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of "Commercial Motor Vehicles" and its equipment and/or accessories.  A "For-hire Motor Carrier" is one who provides transportation of property or passengers to individuals and businesses.  A "Common Motor Carrier" is one who provides transportation of property or passengers to any and all individuals and businesses. A "Contract Motor Carrier" is one who, under a contract, provides transportation of property or passengers only to specific individuals and businesses.  A "Private Motor Carrier" is one who provides transportation of their own property or their own passengers with their own "Commercial Motor Vehicles." An "Exempt Motor Carrier" is one provides transportation of a exempt commodity and is, thereby, exempt from economic regulation by FMCSA but is still subject to the safety regulations set forth in the FMCSR.

(17)   A "Broker", "Freight Forwarder", "Transportation Logistics Company", or "Transportation Intermediary" shall mean a person or company that organizes transportation of cargo, goods or freight by "Commercial Motor Vehicle" for individuals or corporations.  A

4

"Broker", "Freight Forwarder", "Transportation Logistics Company", or "Transportation Intermediary" contracts with "Motor Carriers" move the cargo, goods or freight.

(18)    A "Shipper" shall mean a person or company that for whom the cargo, goods or freight are being transported by a "Motor Carrier."

(19)    "Out-of-Service" shall mean a declaration by an authorized enforcement officer of a Federal, State, Canadian, Mexican, or local jurisdiction that a driver, a commercial motor vehicle, or a motor carrier operation, is out-of-service pursuant to FMCSR §§386.72, 392.5, 395.13, 396.9, or compatible laws, or the North American Uniform Out-of-Service Criteria.

(20)    "Accident Register" shall mean record containing a list of all wrecks involving "Motor Carrier" drivers and/or "Commercial Motor Vehicles" that contains the following information and documents, as required by FMCSR § 390.15 and as adopted by Ala. Code § 32-9A-2 (1975): Date of the accident; City or town, or most near, where the accident occurred and the State where the accident occurred; Driver Name; Number of injuries; Number of fatalities; Whether hazardous materials, other than fuel spilled from the fuel tanks of motor vehicle involved in the accident, were released; and Copies of all accident reports.

(21)    "Computerized fleet management system" shall mean a satellite-based communication and positioning system, a driver performance data system, a vehicle diagnostic information system, an asset utilization system, a vehicle two-way or cab communication system, a computer log system, an in-vehicle computer system, a mobile communication system, log management system, paperless log system, a log scanner system, electronic logbook management system, data logging unit or any other similar type system used to compile data or communications of vehicles.

(22)    "On-board data recording device" shall mean any engine data recording device, electronic control module or unit (ECM/ECU), sensing diagnostic module or unit (SDM/SDU), traditional or computerized tachograph, radar collision warning system, transponder, log management system, paperless log system, electronic logbook management system, data logging, electronic mobile communication and tracking technology or any other similar type system used to compile data.

## **REQUESTS FOR PRODUCTION**

1.   Produce for inspection and copying any and all personnel, employee or driver handbooks or manuals, safety or standard operating procedure manual, orientation or new employee manuals, and/or training and educational materials, texts, brochures, pamphlets, forms or any other such documents that pertain to or were used at any time during your employment with any Defendant involved in this lawsuit.  This request is inclusive of all replaced, amended or updated documents, all amendments, changes and supplements to such documents, and all proposed amendments, changes and supplements that were not adopted.

2.   Produce for inspection and copying any and all documents regarding any alcohol and controlled substance test conducted on you during your employment with any Defendant or as a result of the incident made the basis of the Complaint.

3.   Produce for inspection and copying all documents that would be in your "Driver File", as defined above.

5

4. Produce for inspection and copying any and all commercial driver's licenses that you have ever possessed.

5. Produce for inspection and copying all "Duty Status Records" and "Supporting Documents" for any work done by you for any "Motor Carrier" or Defendant for a period of six months prior to and including the date of the wreck. "Duty Status Records" and "Supporting Documents" would be any documents defined above.

6. Produce for inspection and copying any and all documents pertaining or related in any way to audits conducted of your "Duty Status Records" and "Supporting Documents" for work done for any "Motor Carrier" or Defendant for a period of six months prior to and including the date of the wreck made the basis of the Complaint.  "Duty Status Records" and "Supporting Documents" would be any documents defined above.

7. Produce for inspection and copying any and all paychecks received from any employer, "Motor Carrier" or Defendant for a period of six months prior to and including the date of the wreck made the basis of the Complaint, including all documentation submitted to be used to compile the amount of the paycheck.

8. Produce for inspection and copying any and all tax returns, including all supporting documents, you filed during your employment with any Defendant.

9. Produce for inspection and copying any and all documents regarding a preventability decision for the accident in question, as well as any preventability decision resulting from any accident involving you at all times during your employment with any Defendant, including all accident review policies and procedures for determining whether any accident is chargeable or non-chargeable, preventable or non-preventable and all documents reviewed or provided to the accident review committee.

10. Produce for inspection and copying any and all documents that pertain to you or any "Commercial Motor Vehicle" you were operating being placed "Out-of-Service."

11. Produce for inspection and copying any and all local, state, or federal agencies' investigative reports of this wreck made the basis of the lawsuit, and any other wreck involving.

12. Produce for inspection and copying any and all documents relating to your employment with any Defendant, including any files kept by you at your home or any other business location.

13. Produce for inspection and copying any and all documents in your possession relating to your employment with any "Motor Carrier" for 10 years prior to your employment by any Defendant.

14. Produce for inspection and copying any and all photographs taken or made by you or on your behalf, or in your possession, relating to the incident made the basis of the lawsuit.

15. Produce for inspection and copying any and all documents pertaining to any expert employed

on your behalf in the lawsuit.  Produce for inspection and copying said expert's entire file relating to the above-captioned case, including, but not limited to, any and all records, handwritten notes, calculations, results of research and investigation, records, reports, correspondence, memoranda, questionnaires, testing and testing results, photographs, video tapes, diagrams, charts, bills rendered and statements of charges, as well as any and all other materials in his possession pertaining to his evaluation of the incident made the basis of the lawsuit.

16. Produce for inspection and copying any and all agreements, contracts, leases or correspondence of any kind or character relating to your business relationship with any owner of any "Commercial Motor Vehicle" involved in the incident made the basis of the lawsuit, any "Motor Carrier", "Shipper", "Broker", "Freight Forwarder", "Transportation Logistics Company", or "Transportation Intermediary" and any other person or entity having any interest of any kind or character in the "Commercial Motor Vehicle" or any goods, cargo, or freight thereon at the time of the incident made the basis of the lawsuit.

17. Produce for inspection and copying any and all documents generated or used by you as a result of the wreck made the basis of the lawsuit.  This request includes, but is not limited to, accident packages, pictures, witness statement forms, driver statement forms, waiver of liability forms, accident and incident forms, or any other documents created by the driver involved in the incident made the basis of the lawsuit.

18. Produce for inspection and copying any and all safety meeting documents for all safety meetings available to be attended by you during your employment with any Defendant.

19. Produce for inspection and copying any and all signed or unsigned statements of any kind or character taken by you or on your behalf from any plaintiff.

20. Produce for inspection and copying any and all exhibits, documents, articles or things that you intend to offer or use in the trial of this case to demonstrate, illustrate, aid or assist the testimony of any witnesses, including models or facsimiles or subjects or articles.

*/s Davis L. Middlemas*
Davis L. Middlemas (MID007)
Attorney for Plaintiff

OF COUNSEL:
Morris Bart & Associates, LLC
Shipt Tower
420 North 20th Street
Suite 2750
Birmingham, AL 35203
(205) 484-0900
dmiddlemas@morrisbart.com

**PLEASE SERVE WITH COMPLAINT**



AlaFile E-Notice

01-CV-2022-900975.00

To:  DAVIS LAWSON MIDDLEMAS
     dmiddlemas@morrisbart.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

RONNIE HILL JR. V. CHRISTOPHER PATTERSON ET AL
01-CV-2022-900975.00

The following complaint was FILED on 4/1/2022 3:53:06 PM

Notice Date:     4/1/2022 3:53:06 PM

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov



AlaFile E-Notice

01-CV-2022-900975.00

To:  CHRISTOPHER PATTERSON
45 SHADOW LANE
CAROLLTON, GA, 30117

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

RONNIE HILL JR. V. CHRISTOPHER PATTERSON ET AL
01-CV-2022-900975.00

The following complaint was FILED on 4/1/2022 3:53:06 PM

Notice Date:     4/1/2022 3:53:06 PM

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov



AlaFile E-Notice

01-CV-2022-900975.00

To:  USA TRUCK, LLC
     C/O CT CORP SYSTEM
     124 W CAPITOL AV STE 1900
     LITTLE ROCK, AR, 72201

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

RONNIE HILL JR. V. CHRISTOPHER PATTERSON ET AL
01-CV-2022-900975.00

The following complaint was FILED on 4/1/2022 3:53:06 PM

Notice Date:     4/1/2022 3:53:06 PM

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>01-CV-2022-900975.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### RONNIE HILL JR. V. CHRISTOPHER PATTERSON ET AL

**NOTICE TO:** CHRISTOPHER PATTERSON, 45 SHADOW LANE, CAROLLTON, GA 30117
*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S),
DAVIS LAWSON MIDDLEMAS
,
*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: 420 20TH STREET NORTH, SUITE 2750, BIRMINGHAM, AL 35203 .
*(Address(es) of Plaintiff(s) or Attorney(s))*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of RONNIE HILL JR.
pursuant to the Alabama Rules of the Civil Procedure.                    *[Name(s)]*

    04/01/2022        /s/ JACQUELINE ANDERSON  SMITH    By: 
     *(Date)*           *(Signature of Clerk)*        *(Name)*

☑ Certified Mail is hereby requested.    /s/ DAVIS LAWSON MIDDLEMAS
            *(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .
            *(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,
 *(Name of Person Served)*          *(Name of County)*

Alabama on _____ .
       *(Date)*

_____   _____   _____
*(Type of Process Server)*      *(Server's Signature)*       *(Address of Server)*

            _____   _____
            *(Server's Printed Name)*      *(Phone Number of Server)*

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>01-CV-2022-900975.00 |
| --- | --- | --- |

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### RONNIE HILL JR. V. CHRISTOPHER PATTERSON ET AL

**NOTICE TO:** USA TRUCK, LLC, C/O CT CORP SYSTEM 124 W CAPITOL AV STE 1900, LITTLE ROCK, AR 72201

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S),
DAVIS LAWSON MIDDLEMAS

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: 420 20TH STREET NORTH, SUITE 2750, BIRMINGHAM, AL 35203

*(Address(es) of Plaintiff(s) or Attorney(s))*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of RONNIE HILL JR. pursuant to the Alabama Rules of the Civil Procedure.

*[Name(s)]*

04/01/2022                    /s/ JACQUELINE ANDERSON  SMITH          By: _____

*(Date)*                    *(Signature of Clerk)*                    *(Name)*

☑ Certified Mail is hereby requested.          /s/ DAVIS LAWSON MIDDLEMAS

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____.

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*          *(Name of County)*

Alabama on _____.

*(Date)*

_____          _____          _____

*(Type of Process Server)*          *(Server's Signature)*          *(Address of Server)*

_____          _____

*(Server's Printed Name)*          *(Phone Number of Server)*



# NOTICE TO CLERK

### REQUIREMENTS FOR COMPLETING SERVICE BY
### CERTIFIED MAIL OR FIRST CLASS MAIL

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
RONNIE HILL JR. V. CHRISTOPHER PATTERSON ET AL

01-CV-2022-900975.00

To:  CLERK BIRMINGHAM
clerk.birmingham@alacourt.gov

TOTAL POSTAGE PAID: $19.92

Parties to be served by Certified Mail - Return Receipt Requested

CHRISTOPHER PATTERSON                                    Postage: $9.96
45 SHADOW LANE
CAROLLTON, GA 30117

USA TRUCK, LLC                                           Postage: $9.96
C/O CT CORP SYSTEM
124 W CAPITOL AV STE 1900
LITTLE ROCK, AR 72201

Parties to be served by Certified Mail - Restricted Delivery - Return Receipt Requested

Parties to be served by First Class Mail

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

**A. Signature**

X ☐ Agent ☐ Addressee

**B. Received by (Printed Name)** | **C. Date of Delivery**

1. Article Addressed to:

CHRISTOPHER PATTERSON

45 SHADOW LANE
CAROLLTON, GA 30117

**D. Is delivery address different from item 1?** ☐ Yes
If YES, enter delivery address below: ☐ No

S /C

CV - 22 - 9 00 975

9590 9402 7107 1251 0754 19

**3. Service Type**
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ... Mail
☐ ... Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

7021 1970 0001 4428 9827

PS Form **3811**, July 2020 PSN 7530-02-000-9053 | Domestic Return Receipt



**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

USA TRUCK, LLC
C/O CT CORP SYSTEM
124 W CAPITOL AV STE 1900
LITTLE ROCK, AR 72201

9590 9402 7107 1251 0754 26

2. Article Number (Transfer from service label)

7021 1970 0001 4428 9841

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:    ☐ No

S/C    D2

CV-22-900975

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ... ail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

---

7021 1970 0001 4428 9841

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)    $
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery    $
☐ Adult Signature Required    $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

Postmark
Here

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions



# NOTICE TO CLERK

### REQUIREMENTS FOR COMPLETING SERVICE BY
### CERTIFIED MAIL OR FIRST CLASS MAIL

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
TERESA FOSTER V. #1 STUNNAS MOTORSPORTS CLUB HEADQUARTERS, INC. ET AL

01-CV-2022-900972.00

To:  CLERK BIRMINGHAM
     clerk.birmingham@alacourt.gov

TOTAL POSTAGE PAID: $19.92

Parties to be served by Certified Mail - Return Receipt Requested

#1 STUNNAS MOTORSPORTS CLUB HEADQUARTERS, INC.                    Postage: $9.96
16029 AVALON AVENUE
SOUTH HOLLAND, IL 60473

#1 STUNNAS MOTORSPORTS CLUB, INC.                                 Postage: $9.96
201 BEACON PARKWAY W
SUITE 107
HOMEWOOD, AL 35209

Parties to be served by Certified Mail - Restricted Delivery - Return Receipt Requested

Parties to be served by First Class Mail

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

#1 STUNNAS MOTORSPORTS CLUB HEADQUARTERS, INC.

16029 AVALON AVENUE
SOUTH HOLLAND, IL 60473

9590 9402 7107 1251 0754 33

2. Article Number (Transfer from service label)

7021 1970 0001 4428 9834

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

SC

CV-22 - 900972

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
($)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt



7021 1970 0001 4428 9834

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)   $
☐ Return Receipt (electronic)   $
☐ Certified Mail Restricted Delivery   $
☐ Adult Signature Required   $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

Postmark
Here

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

#1 STUNNAS MOTORSPORTS CLUB, INC.
201 BEACON PARKWAY W
SUITE 107
HOMEWOOD, AL 35209

9590 9402 7107 1251 0754 40

7021 1970 0001 4428 9858

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

S/C  D2

CV - 22 - 900972

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ ...Mail
- ☐ ...Mail Restricted Delivery

- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☒ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt



**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CHRISTOPHER PATTERSON

45 SHADOW LANE

CAROLLTON, GA 30117

9590 9402 7107 1251 0754 19

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

A Patterson

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:    ☐ No

CV - 22 - q 00 75

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☒ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery



7021 1970 0001 4428 9827

PS Form 3811, July 2020 PSN 7530-02-000-9053                    Domestic Return Receipt

**USPS TRACKING #**

ATLANTA METRO 301

9590 9402 7107 1251 0754 19

**United States**
**Postal Service**

* Sender: Please print your name, address, and ZIP+4® in this box•

JACQUELINE ANDERSON SMITH, CLERK

ROOM 400 JEFF CO COURTHOUSE

716 RICHARD ARRINGTON JR BLVD., NO.

BIRMINGHAM, ALABAMA 35203

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

FILED IN OFFICE
CIRCUIT CIVIL DIVISION

APR 1 1 2022

JACQUELINE ANDERSON SMITH
CLERK



AlaFile E-Notice

01-CV-2022-900975.00

Judge: TAMARA HARRIS JOHNSON

To: MIDDLEMAS DAVIS LAWSON
dmiddlemas@morrisbart.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

RONNIE HILL JR. V. CHRISTOPHER PATTERSON ET AL
01-CV-2022-900975.00

The following matter was served on 4/8/2022

**D001 PATTERSON CHRISTOPHER**

**Corresponding To**

CERTIFIED MAIL

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

USA TRUCK, LLC

C/O CT CORP SYSTEM

124 W CAPITOL AV STE 1900

LITTLE ROCK, AR 72201



9590 9402 7107 1251 0754 26

2. Article Number (Transfer from service label)

7021 1970 0001 4428 9841

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

XCT CORPORATION
☐ Agent
☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery
APR 0 8 2022

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

S/C   D2

CV- 22 - 900975

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...ail
☐ ...ail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053                    Domestic Return Receipt



**USPS TRACKING #**

9590 9402 7107 1251 0754 26

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

FILED IN OFFICE
CIRCUIT CIVIL DIVISION

APR 11 2022

JACQUELINE ANDERSON SMITH
CLERK

* Sender: Please print your name, address, and ZIP+4® in this box•

JACQUELINE ANDERSON SMITH, CLERK
ROOM 400 JEFF CO COURTHOUSE
716 RICHARD ARRINGTON JR BLVD., NO.
BIRMINGHAM, ALABAMA 35203



AlaFile E-Notice

01-CV-2022-900975.00

Judge: TAMARA HARRIS JOHNSON

To:  MIDDLEMAS DAVIS LAWSON
     dmiddlemas@morrisbart.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

RONNIE HILL JR. V. CHRISTOPHER PATTERSON ET AL
01-CV-2022-900975.00

The following matter was served on 4/8/2022

D002 USA TRUCK, LLC
Corresponding To
CERTIFIED MAIL

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov